FRANK V. THORNTON, APPELLEE, V. JAMES C. DAVIS,
APPELLANT.

FILED MAY 23, 1925.    No. 23116.

1.  **Evidence:** WEIGHT OF EVIDENCE. "The weight to be given to evidence cannot be determined alone by the number of witnesses who testify to a given state of facts, but rather by the character of each witness, his appearance and demeanor upon the witness-stand, his bias or prejudice, his relationship, if any, to the parties, the reasonableness or unreasonableness of the story told, and by those intricate tests that are either consciously or unconsciously applied by triers of fact as they observe the witness upon the stand and hear his testimony as it is uttered from his own lips." *Moore v. Williams*, 111 Neb. 342.

2.  **Evidence** outlined in the opinion *held* sufficient to support the verdict.

3.  **Appeal:** REVIEW: ARGUMENT OF COUNSEL. Where it is claimed that an attorney is guilty of misconduct in arguing a case to a jury, and it is desired to raise a question on that point for decision in the supreme court, it is necessary that objection be made to the trial court at the time, and an adverse ruling had thereon, and that the same be made a part of the record by a proper bill of exceptions.

4.  ———: ———. Matters not pleaded nor called to the attention of the trial court will not be considered on appeal.

5.  ———: RULINGS. The rulings of the trial court on the admission of evidence have been examined, and *held* free from error.

6.  ———: ———. Rulings of the court on instructions to the jury have been examined, and *held* free from error.

7.  ———: REMITTITUR. On the record presented, it is *held* that the judgment is not so excessive as to require a remittitur.

APPEAL from the district court for Douglas county: CHARLES A. GOSS, JUDGE. *Affirmed.*

*William Baird & Sons, Helsell & Helsell* and *W. S. Horton,* for appellant.

*John J. Shannon* and *William R. Patrick, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

MORRISSEY, C. J.

This action was brought by plaintiff, under the federal employers' liability act, against defendant as director general of railroads.

Plaintiff alleged that, on March 5, 1918, he was employed by defendant as a watchman on an interstate bridge which crosses the Missouri river, extending from Omaha, Nebraska, to Council Bluffs, Iowa, and which forms a part of the Illinois Central railroad system; that on the date mentioned an ice gorge, which threatened the security of the bridge, had formed in the river; that, in an effort to break up the ice gorge, the foreman in charge of the bridge, and under whose immediate directions plaintiff worked, prepared a number of sticks of dynamite for use in blasting the ice gorge; that plaintiff, at the direction of the foreman, handed him a detonator which he negligently let fall upon a steel rail; that the detonator was thereby exploded, and, as a result of the explosion, plaintiff suffered the injury set out at length in his petition.

Defendant denied all negligence on his part, and specifically alleged that whatever injuries plaintiff received were the result of plaintiff's own negligence; that plaintiff was experienced in his work and knew and appreciated the risk assumed in handling the explosives, and by remaining in the employment without complaint assumed the risk; that at the time of the injury he was acting without authority or direction, and was, therefore, a volunteer. The reply was in the nature of a general denial of the new matter contained in the answer.

The cause was tried to a jury, which returned a verdict for plaintiff, and from the judgment entered upon this verdict defendant has appealed.

The first assignment deals with the sufficiency of the evidence to support the verdict. Plaintiff testified that the foreman had called him to assist in procuring dynamite which was buried near the bridge; that this dynamite was taken to the tower on the bridge, and there it was left in proximity to the heating plant for some time that its

efficiency might be increased and that it might be more readily and safely prepared for use; that the foreman and plaintiff finally took several sticks of dynamite, some fuses, and a box of detonators and descended to the deck of the bridge, where, with the assistance of plaintiff, the foreman prepared two or three sticks of dynamite for use; that, in doing this work, plaintiff, under the direction of the foreman, took from the box a detonator and handed it to the foreman; that the foreman dropped it upon a steel rail; that it exploded and seriously and permanently injured plaintiff.

That plaintiff was injured by the explosion of a detonator at the time and place alleged is not open to dispute, but the manner of bringing about the explosion of the detonator is seriously questioned. The foreman testified, explicitly denying that he dropped the detonator or that plaintiff, when the explosion occurred, was assisting him in preparing the dynamite for use. According to his version of the affair, when he returned to the bridge at about 2 o'clock in the afternoon, the ice gorge mentioned by plaintiff had formed; and that he and plaintiff went to a box, which was buried on the bank of the river, and procured several sticks of dynamite; that they took the dynamite to the tower of the bridge, prepared it for use, as detailed by plaintiff, and that a few sticks thereof were thrown upon the ice gorge, and that he then went to the tower, leaving plaintiff upon the deck of the bridge; that he looked over the deck and saw plaintiff lay a detonator upon a steel rail and strike it with another piece of steel. His statement that he saw plaintiff strike the detonator is qualified, if not entirely withdrawn, by subsequent statements. Perhaps his testimony, as a whole, may more accurately be said to be that he claims to have looked over the deck of the tower immediately upon hearing the explosion. He testified that he then descended to the deck of the bridge, and that he was then told by plaintiff that plaintiff had placed the detonator upon the rail and that he had struck it with a short piece of steel rail. No person was present at the time except

Thornton v. Davis.

plaintiff and this witness, and there is a direct and irreconcilable conflict in their testimony as to the cause of the explosion. While plaintiff was in the hospital, a claim agent of the employer procured from him a written statement, which, speaking generally, corroborates the foreman. On the trial, defendant produced the testimony of witnesses who claimed to have talked with plaintiff soon after the accident, and they testified to plaintiff's having said to them he had struck the detonator with the piece of steel rail mentioned by the foreman. Defendant also produced the testimony of two witnesses, who are said to have had much experience in the handling of dynamite and dynamite detonators, and each of them expressed the opinion that the detonator could not have been exploded in the manner testifield to by plaintiff.

In rebuttal, plaintiff testified that, when he made the signed statement offered in evidence by defendant, which read in part as follows, "As I was going to hand this cap to Mr. Kleinlien, it slipped out of my fingers and dropped," he was in bed suffering from the effects of the injury; that the paper was written by the claim agent, who did not read it to plaintiff, and that plaintiff did not read it. Plaintiff also testified that the foreman asked plaintiff not to disclose the manner of receiving his injury because to do so might cause the foreman to lose his job. On behalf of plaintiff there was also offered the evidence of his mother, sister, and brother-in-law, that the foreman had admitted in their presence that the detonator had been dropped by him as alleged by plaintiff. There is also testimony in behalf of plaintiff to the effect that, on the evening of the day plaintiff suffered the injury, the foreman told the brother of plaintiff that he, the foreman, had accidentally shot plaintiff with a revolver, and later changed that statement and said that plaintiff was injured by falling over a coal bucket, and finally changed that statement again by saying that he, the foreman, had dropped a detonator which exploded and caused the injury to plaintiff, and that he expressed fear lest this incident might cause him to "lose his job."

Thornton v. Davis.

In weighing the evidence offered by the respective parties, it may be mentioned that, on cross-examination, the foreman was evasive in many of his answers. When asked as to whether or not he had, on the evening of the accident, told plaintiff's brother that he, the witness, had accidentally shot plaintiff, he failed to make an explicit denial, nor did he deny that a short time thereafter he undertook to explain plaintiff's injury by saying that plaintiff had fallen over a coal bucket. Again, he was asked the question whether or not, on the same evening, he had stated that he, the witness, had dropped the detonator and that its explosion had injured plaintiff. In place of making a denial, as might be expected in view of his direct testimony, he said that he knew nothing about it. Plaintiff's counsel, summarizing the cross-examination, put the question: "Q. Well, what I am getting at, did you or did you not make those statements, or any of them, to Dick Thornton on the evening of March 5, 1918? A. Well, that would be a hard question for me to honestly answer, whether I did or whether I didn't. That has been four years ago."

Defendant put in evidence the written statement procured from plaintiff by its claim agent wherein plaintiff said that the detonator slipped out of his fingers and dropped to the rail, thereby exploding. Unless it be held that this statement merely convicts plaintiff of making inconsistent claims, or statements, the testimony of the experts called by defendant is in conflict with defendant's own theory. It is clear that, if the explosion occurred as recited in the written statement, the conclusions of the experts are unsound. On the other hand, if the experts are correct in their conclusions, the explosion was not produced in the manner described in the written statement. The testimony throughout is in irreconcilable conflict. It was the function of the jury to determine its truth or falsity.

"The weight to be given to evidence cannot be determined alone by the number of witnesses who testify to a given state of facts, but rather by the character of each witness, his appearance and demeanor upon the witness-stand, his

bias or prejudice, his relationship, if any, to the parties, the reasonableness or unreasonableness of the story told, and by those intricate tests that are either consciously or unconsciously applied by triers of fact as they observe the witness upon the stand and hear his testimony as it is uttered from his own lips." *Moore v. Williams,* 111 Neb. 342.

The evidence is sufficient to support the verdict.

Complaint is made of alleged misconduct of plaintiff's attorney in his closing argument to the jury, but as the record is silent as to the nature of the argument this assignment cannot be considered. *Hamblin v. State,* 81 Neb. 148.

Plaintiff was a minor at the time he received his injuries, and the point is now made that it was error for the court to permit the jury, in assessing plaintiff's damages, to take into account his loss of earnings during his minority, it being said that the father was entitled to plaintiff's wages. There is no direct evidence in the record as to whether plaintiff had been emancipated or not, although it does appear that he made his own contracts of employment and the father made no claim to the wages earned. This point was neither pleaded nor called to the attention of the trial court and will not be further considered.

Complaint is made as to certain rulings of the trial court on the admission or exclusion of evidence; but, when these rulings are considered in the light of the issues before the court, no error prejudicial to appellant is apparent. The issues were comparatively simple, and counsel for the respective parties and the court seem to have kept these issues plainly in view, and, as it appears to us, neither party was prejudiced in the manner of proving his cause of action or his defense.

Complaint is made of the instructions of the court, notably because the court did not instruct on the doctrine of contributory negligence. Contributory negligence was not pleaded, nor would the proof support such a plea. There is no error in the instructions given, nor did the court err in refusing the instructions defendant tendered.

Finally, it is urged that the recovery is excessive. The

evidence as to plaintiff's injuries, while, not without dispute, is sufficient to support a finding that he is permanently disabled from following railroad work, to which apparently it was his ambition to devote himself.   Prior to the trial he had endured much pain and suffering as a result of the injury and it may reasonably be inferred that he will continue to suffer throughout his life.   His earning capacity has been greatly reduced and there is no showing of his ability to take up an intellectual pursuit where the active use of his injured leg may not be required.   He is young, the years of his expectancy are many, and, under the circumstances, we do not feel warranted in reducing the amount fixed by the jury.

As the record is free from error, the judgment is

AFFIRMED.