HELEN WISNIEWSKI, as Administratrix, etc., of WALENTI WYSZYNSKI, Deceased, Respondent, v. NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, January 8, 1930.

*Mark N. Turner*, for the appellant.

*John Leo Sullivan* [*Anthony Johnson* with him on the brief], for the respondent.

EDGCOMB, J.   Shortly after noon on September 2, 1927, Walenti Wyszynski, plaintiff's intestate, was struck and killed by an east-bound passenger train of the defendant at the Dove street crossing in the city of Dunkirk.   This action is brought to recover the pecuniary damages which the next of kin claim to have sustained by reason of his untimely death.   Plaintiff has recovered, and the defendant appeals.

The crossing in question was protected by gates.   Decedent was walking southerly along the westerly sidewalk of Dove street, and had reached the third track from the north when the accident occurred.   There is evidence which, if believed, would sustain a finding that the gates were not lowered until after the decedent had passed under the northerly gate, and had reached the first track, and that the train was traveling at a rapid rate of speed without giving any warning signal of its approach.   Under these circumstances, defendant's negligence was a question for the jury. (*Elias* v. *Lehigh Valley R. R. Co.*, 226 N. Y. 154, 158.)

Neither can we say as matter of law that plaintiff's intestate was negligent.   While the defendant was not required to guard this crossing by gates, the fact that they were there would justify one, who was familiar with the situation, in placing some reliance upon the implied invitation to proceed across the tracks because of the raised gates, and the fact that the way was not obstructed by the lowered bar may have lulled decedent into a sense of security and affected the vigilance which would otherwise have been required of him.   All this was a question for the jury.   (*Elias* v. *Lehigh*

*Valley R. R. Co., supra; Kane* v. *N. Y., N. H. & H. R. R. Co.,* 132 N. Y. 160.)

However, the raised gates did not dispense with the necessity of vigilance on the part of decedent as he entered the zone of danger. (*Scaggs* v. *President, etc.,* 145 N. Y. 201.) He could not proceed blindly. He knew that he was approaching a railroad crossing, which is a recognized place of danger, and he was required to use his senses. He was not only bound to listen but to look intelligently for approaching trains. The tracks to the west, in which direction the fatal train was coming, were straight for several hundred feet; just how far does not appear; then they curved to the south. There is some evidence that decedent did look to the west; just where he was at that moment does not definitely appear. If he looked when the train was within his vision, we must assume that he saw it. One cannot look at an object the size of a locomotive and say that he did not see it. If the train was on the curve, decedent might easily have mistaken the track on which it was coming. If it is true that the gates had been lowered after Wyszynski passed under the northerly one, and he found himself on the tracks shut in between the gates, with a train approaching at a rapid rate of speed, he might easily have become frightened and confused, and have thought that safety lay in hurrying across all four tracks instead of standing still or stepping back out of the way of the oncoming train. At any rate, we think that the situation, if plaintiff's version of the accident is to be accepted, was such as to render the question of decedent's negligence one for the jury rather than the court. (*Palmer* v. *N. Y. C. & H. R. R. R. Co.,* 112 N. Y. 234.)

We have concluded, therefore, that the denial of defendant's motion for a nonsuit was proper.

This brings us to a discussion of the refusal of the court to admit certain evidence, which is urged as a ground for reversal.

Albert J. Coterass was an important witness for the plaintiff. He claimed to have seen the accident. He testified to the speed of the train, and the lack of warning signals. He said that the gates were lowered after decedent had reached the track, and just before the train passed the crossing. He was interviewed by defendant's claim agent a few days after the accident, and the conversation was taken down in shorthand by a Supreme Court stenographer, who later transcribed his minutes. The stenographer was called by the defendant, and his shorthand notes and the transcript thereof were offered in evidence. Plaintiff's objection to their reception was sustained, and an exception was taken. While this statement is not before us, and we do not know all that

it contains, enough appears in the record to warrant the assumption that it showed material contradictions in the story of the witness as told on the stand.

It is always permissible to attack the credibility of a witness by showing that, at some other time, he has said things which are inconsistent with or contrary to the testimony which he has given on the trial. That is one of the well-recognized methods of impeaching a witness. However, the proper foundation must first be laid for the receipt of such evidence. (*McCulloch* v. *Dobson,* 133 N. Y. 114, 124; *Larkin* v. *Nassau Electric R. R. Co.,* 205 id. 267.)

The proper practice to be followed is laid down in *Larkin* v. *Nassau Electric R. R. Co.* (*supra*) and the authorities are there collated and cited. Before evidence of prior inconsistent statements can be given, justice demands that the attention of the witness should first be called to the subject, and that he be adequately warned on cross-examination that what he has formerly said will be used against him, so that he may have the opportunity to deny having made the statement, or to explain it, or to change his testimony, if his memory is refreshed and he wishes so to do.

In the case of verbal statements, the attention of the witness should be called to what it is claimed he had previously said, specifying the time when, the place where, and the person with whom the alleged conversation was had, and he should be asked if he had so stated. If he does not admit it, proof may then be given of the facts. (*Hart* v. *Hudson River Bridge Co.,* 84 N. Y. 56, 60; *Rice* v. *Rice,* 43 App. Div. 458, 460.)

If the witness has made a written statement, it must first be shown or read to him, and marked for identification. Then, if its authenticity and correctness are established, either by the admission of the witness or by competent proof, it may be introduced in evidence in the regular course of the trial. (*Romertze* v. *East River National Bank,* 49 N. Y. 577; *Hanlon* v. *Ehrich,* 178 id. 474, 481.)

While the transcribed minutes of the stenographer were not signed by Coterass, and had never been shown to him, their accuracy, as well as their genuineness, was established. Whether they could properly have been received in evidence as a written statement of Coterass, upon being marked for identification, and shown or read to him, or whether they can only be considered as a memorandum made by the stenographer, and, therefore, inadmissible as evidence, need not be determined here, and we do not pass upon that question.

The result would be practically the same whether the transcript prepared by the stenographer had been received as evidence, or

whether the witness had used it to refresh his recollection, and had then testified to the conversation. The former method would be a short cut. Under a similar state of facts, it has been held in some jurisdictions that the facts could be proven by either method. (*Higgins* v. *State*, 157 Ind. 57, 63; *Wright* v. *Wright*, 58 Kan. 525.) I find no authority in this State upon this particular question.

It would certainly be competent for the stenographer, if he was unable to recollect what Coterass had said on the occasion of this interview, to refresh his memory by reference to his notes, and to then testify to the facts. If he had entirely forgotten the conversation, and could not recall it, even with the aid of his notes, but was able to say that he once knew what was said and had written it down, and that his notes were correct, or that he believed them to be so, they could properly be received in evidence. (*Howard* v. *McDonough*, 77 N. Y. 592; *McCarthy* v. *Meaney*, 183 id. 190, 193.)

But further discussion of this matter is unnecessary. The evidence was inadmissible on either theory, because the proper foundation for its reception was not laid. The ruling of the court, therefore, in rejecting this evidence did not constitute error.

Numerous exceptions to the charge were taken by the defendant, and these are urged as a ground for reversal. One especially merits careful attention.

In the course of his charge the trial court said to the jury: " Now there is a presumption in support of plaintiff's cause of action that the decedent exercised reasonable care for his own safety, that he used his faculties as would a reasonable man under all the circumstances." It is evident that the court referred to a rebuttable presumption. This portion of the charge was excepted to by the defendant, and constitutes, we think, reversible error.

While it is true that the burden of proof rested on the defendant to show that the decedent was negligent, and, in the absence of any evidence upon that subject, plaintiff would have been entitled to recover, if the defendant had been careless, that is a far different situation from saying that there was a presumption that decedent used the care of a reasonably prudent man in crossing these tracks. There is a marked distinction between burden of proof and a presumption. Ordinarily, a presumption rests upon a logical inference which may properly be drawn from other facts which have been proven, or which are admitted, because of the experienced course of human conduct and affairs, and the connection which is usually found to exist between the fact which is assumed and those from which it is drawn. While we may assume that a person is desirous of preserving his life and limb, it is common knowledge

that multitudes are daily taking all kinds of chances at railroad crossings. Common experience does not warrant the conclusion that one who is struck and killed by a locomotive at a railroad crossing was conducting himself as a reasonably prudent person would under like circumstances. The contrary is so frequently true that such deduction would not be justified from the mere happening of the accident. It is true that some rebuttable presumptions rest on some policy of that particular branch of the law with which they are connected, rather than on a logical conclusion which one versed in the art of reasoning would naturally draw. But there is no rule of law which arbitrarily requires a jury to presume from the mere happening of the accident that one who is killed at a railroad crossing was careful. In the absence of any evidence, we would be no more justified in saying that a presumption existed that decedent was free from negligence than we would in holding that defendant was presumed to have been without fault for this accident. It has long been the custom of trial judges to charge the jury in cases of this character that negligence cannot be presumed from the mere happening of the accident and the resulting injury.

. The charge in the case at bar required the defendant not only to prove that decedent was guilty of negligence, but to produce sufficient proof to overcome a presumption that deceased was using the care for his own safety which a reasonably prudent man would have used under like circumstances. This additional burden was improperly put upon the defendant.

It was said by ANDREWS, J., in *Reynolds* v. *N. Y. C. & H. R. R. R. Co.* (58 N. Y. 248): " Doubtless, the jury might infer that the deceased was governed by the natural instinct of self-preservation, and would not put himself recklessly and consciously in peril of death, but that men are careless and subject themselves thereby to injury, is the common experience of mankind, and when injured, no presumption exists in the absence of proof that they were exercising due care at the time." The fact that since these lines were written the burden of proof in a death case, so far as it relates to contributory negligence, has been shifted from the plaintiff to the defendant, does not take away the force of what was said on the question of presumption.

: An analogy to the situation here may be found in *St. John* v. *Andrews Institute* (117 App. Div. 698, 703) where attention is called to the fact that in this State there is no presumption of survivorship between those who perish in a common disaster, based upon sex or age, nor is there any presumption that death in such a case occurred to all at the same moment, and yet through

necessity, in the administration of the law, the title to real and personal property passes, in the absence of facts or circumstances tending to show survivorship among them, as if all had perished at the same instant. The modification of the judgment by the Court of Appeals in 191 New York, 254, in no way alters the above holding.

The question of fact as to decedent's negligence is very close. The importance of this instruction, therefore, is enhanced, and we cannot say that the error was harmless.

For the reason above stated, we think that the judgment should be reversed.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.