GEORGE MOORE, APPELLEE, V. FRANK KREJCI ET AL., APPELLANTS.

297 N. W. 913

FILED MAY 9, 1941. No. 31013.

*Chambers, Holland & Locke* and *Dwyer & Dwyer*, for appellants.

*Rudolph Tesar* and *Walter H. Smith, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE and YEAGER, JJ., and CHAPPELL and POLK, District Judges.

POLK, District Judge.

This is an action for damages for personal injuries sustained in a collision between an automobile operated by the plaintiff and a truck owned by the defendant Mabel Krejci and operated by the defendant Frank Krejci. From a verdict and judgment for the ·plaintiff for $17,594 the defendants appeal.

The record shows without contradiction that the collision occurred at about 7:30 to 8:00 o'clock p. m. on September 2, 1938, on highway 73-75 about a mile north of the city of Plattsmouth, Nebraska; that immediately prior thereto plaintiff wàs driving to the northward and defendant Frank Krejci was driving to the southward on said highway and

that the collision occurred on the paved portion of said highway a short distance from the crest of a hill extending upward from said city.

It is the contention of the plaintiff that at the time of the collision he was proceeding northward at 25 to 30 miles an hour to the right of the center of said highway and that the truck, traveling southward at a speed of 60 to 65 miles an hour, suddenly turned across the center line of the highway striking the automobile of the plaintiff. Defendant Frank Krejci contends that he was driving southward at about 25 to 30 miles an hour and that the collision resulted from negligence of the plaintiff in turning across the center of the highway in an attempt to pass two vehicles immediately preceding him and near the crest of the hill. It is apparent from the contentions of the parties that the point of collision with reference to the center line of the highway is the main fact in dispute and its location determinative of the rights of the parties.

The assigned errors of the trial court, while eight in number, are in truth only three, namely: (1) That the verdict is contrary to the physical facts disclosed by the evidence, hence not supported by the evidence; (2) the court erred in excluding exhibit No. 6; and (3) the court erred in refusing to permit a witness to testify concerning his opinion of the direction of the force which caused the damage to the truck, based upon an observation thereof after the accident.

We shall consider the assignments of error in the order named. First, is the verdict contrary to the physical facts disclosed by the evidence? A detailed examination of the record is necessary.

Robert D. Fitch, Jr., a witness for the plaintiff, testified that, as the Cass county surveyor, he went to the scene of the accident, arriving there at 8:30 o'clock p. m. the day of the accident and made certain measurements and markings with reference to the vehicles involved, and that on the following day he measured certain skid marks; that plaintiff's automobile was headed in a northwesterly di-

rection with the left front wheel two-tenths of a foot east of the center line of the pavement; that the left front wheel was two and one-half feet back of its normal position and that had it been in a normal position it would have extended somewhat west of the center line; that the truck of the defendants was lying on its right side, headed to the northwest 110 to 112 feet south of the point of impact, with its radiator 19.9 feet west of the east curb; that there were two sets of skid marks made by four tires six feet apart and 36½ feet long west of the center of the highway, the nearest one to the center being two and six-tenths feet west of the center, and after extending along the highway 13.3 feet the distance of this skid mark was two and eight-tenths feet west of the center; that said skid marks then turned to the eastward and crossed over the center line at a point 27 feet south of the beginning thereof; that both sets of skid marks were of the same density and denoted a very great amount of friction; that a very pronounced amount of dirt had been shattered from the bottom of plaintiff's automobile and that the dirt was on the east half of the pavement, very nearly directly under the plaintiff's automobile; that the plaintiff's automobile stopped four feet north of the dirt; that the dirt extended possibly four feet by six feet north and south; that the headlight and fore part of the fender of plaintiff's automobile were untouched; that there was considerable glass strewn around on the pavement.

The plaintiff testified that immediately before the collision he was traveling about two feet to the east of the center of the highway; that he noticed lights coming toward him about 350 to 400 feet to the north; that he continued to watch the approaching vehicle, and that as the lights drew near and about the time they were 30 to 35 feet distant he noticed the truck getting closer to the center line and crossing it and, as he expressed it, "I jerked my wheels, my front wheels, and just as I jerked my front wheels trying to get out of the way, why the truck struck me;" that the collision occurred about two feet to the east of the

center line; that immediately prior to the collision he was following a car at a distance of 350 to 400 feet; that he was not gaining on this car; that in his opinion the car that struck him was going around 60 to 65 miles an hour.

The defendant Frank Krejci testified that as he reached the top of the hill prior to the collision he saw the plaintiff's car around 300 to 350 feet away; that the plaintiff's car was to the rear of another passenger car about 100 to 150 feet and this car was to the rear of Kausgaard's truck about 75 feet; that he was traveling from 25 to 30 miles an hour, and that when he was 15 feet away from the plaintiff's car the lights turned toward him and the next thing he knew there was a smash and he was flying through the air. On cross-examination, referring to what he saw the plaintiff do immediately before the collision, his attention was called to his deposition given on May 27, 1939, and in this connection the following questions and answers appear in the record: "Q. Let me ask you if I didn't ask these questions and you didn't make these answers: Question: 'When did he turn?' Answer: 'About the time I was to go behind him.' Question: 'At the time you were going behind him you saw him turn?' Answer: 'Well, he must have.' Question: 'Not what he must have. I want you to tell us just what you saw this Mr. Moore do?' Answer: 'I couldn't say as I saw him do anything.' Did I ask you those questions and did you make those answers? A. I must have; yes, sir." That after the accident plaintiff's car was setting in a north-westerly direction with the front part of the car about two feet ahead of the center line on the west side of the road; that he thought plaintiff's car stopped right where it was hit; that the truck box was 46 inches high and six and one-half feet wide and projected 16 to 18 inches out from the cab of the truck; that the wheels are one and one-half to two inches wider than the body; that when he first saw the plaintiff's car it was on the right-hand side of the highway and that he was watching the center line of the highway. In this connection he was again referred to his deposition and was asked the following questions: "Well, let me

ask you if at that time I didn't ask you this question and you didn't make this answer: Question: 'When you saw him he was on the right-hand side of the road, wasn't he?' Answer: 'When I saw him?' Question: 'To the right of the center?' Answer: 'I wouldn't say as to the center. I wasn't watching the center line.' * * * Did I ask you those questions and did you make those answers? A. I did." Defendant, in answer to a question as to how the accident happened, said: "Well, it seems to me when I passed the Kausgaard truck, it seemed to go by like a zip, and there was another zip and the next thing I knew I was flying through the air. That is just the way it seemed to me."

It is contended by the defendants that one of the conclusive proofs fixing the point of impact on the west side of the center line of the highway is the location of the skid marks made by the defendants' truck about two feet to the west of the said center line; that the wheels of the truck were locked by the force of the impact and that the beginning of the marks definitely fixed the place on the highway where the two cars came together, showing with absolute certainty that the collision occurred on the west side of the highway; that the plaintiff's description of the manner of the collision and the verdict of the jury cannot be reconciled with these undisputed physical facts.

The plaintiff contends that the skid marks started several feet south of the point of impact and that this was due to the fact that the truck wheels left the pavement and the truck itself was knocked through the air to the west from the point of impact. As to whether or not this was a reasonable explanation of the position of the skid marks the following questions and answers from the defendant Frank Krejci's testimony are significant: "Q. What was the next thing that you knew? A. The next thing I knew there was a smash and I was flying through the air. * * * Q. You say you were flying through the air? A. Me and the truck together. Q. You mean by that you were knocked up into the air? A. That's right. Q. You didn't stay up in the air? A. No. Q. When did you come down? A. I don't

remember; shortly after. * * * Q. After the rear wheels hit the pavement again, what next do you recall happened? A. The next I know I was climbing out of my truck upside down. Q. The next thing that you know is that you heard a smack and you and the truck together went up, is that right? A. That's right. * * * Q. Do you know what happened? A. You wouldn't want me to be able to tell you while I was flying through the air. * * * Q. Well, explain it to me then. A. After the accident happened it hit here on the left wheel and my truck seemed to raise up in the air after the accident and it went down the road and this wheel that locked, it couldn't turn, just as it come back down on the pavement and that forced the right-hand side of the truck around on the pavement like this (indicating), and after it got so far it flopped over. Q. You say they were locked for about eight feet? A. After we hit these wheels were up in the air and they didn't turn, but the right-hand side did, and that made it go across the road until it hit the shoulder and then flopped over."

The court is of the opinion that the testimony of the defendant Frank Krejci concerning the movement of the truck after the impact furnishes competent evidence from which the jury can reasonably conclude that the truck was knocked to the westward through the air and that the point of impact could reasonably have been found to have taken place at the point on the highway fixed by the plaintiff. We conclude also that the record contains competent evidence from which the jury could reasonably find that the defendant Frank Krejci was driving at an unlawful rate of speed.

The defendants refer in their brief to the case of *Hessler v. Bellamy*, 128 Neb. 571, 259 N. W. 514, and other cases in support of their contention that, where a verdict of the jury is contrary to the physical facts, it will not be allowed to stand. Plaintiff refers in his brief to the case of *Suhr v. Lindell*, 133 Neb. 856, 277 N. W. 381, and other cases in support of his contention that, where there is a reasonable dispute as to the physical facts, the conclusions to be drawn

therefrom are for the jury. The holdings in *Hessler v. Bellamy, supra,* and *Suhr v. Lindell, supra,* express the settled law of this state and they are in complete accord. The rule is that, where the verdict of the jury is opposed to the undisputed physical facts, or is in flat contradiction of recognized physical laws, it will be set aside, but where there is a reasonable dispute as to what the physical facts show, the conclusions to be drawn therefrom are for the jury. The credibility of the witnesses and the weight to be given their testimony are solely for the consideration of the jury. We conclude that the trial court did not commit error in holding that there was competent evidence showing a reasonable dispute concerning the physical facts and in submitting the matter to the jury.

The next error urged is the refusal of the trial court to admit in evidence exhibit No. 6. The exhibit is a typewritten statement claimed to have been given by the plaintiff on October 10, 1938, while in the hospital, and was offered on cross-examination for the purpose of impeaching the testimony of the plaintiff. The record shows that the statement was made to a scrivener and typewritten in the hospital and signed by the plaintiff with the words "I have read this and it is true" in his handwriting. The plaintiff testified that he remembered "talking to a fellow" and that this individual "wrote something," but that he did not read it over and did not know what he wrote and that he signed it because he "thought he put down the same thing that I told' him." Inferentially the plaintiff denied the truth of exhibit No. 6. The record does not show any attempt to call as a witness the person to whom the purported statement was made, nor does the record show any explanation or reason for failure to do so.

In the case of *Seckinger v. Economy Laundry, Inc.,* 133 Pa. Super. Ct. 414, 3 Atl. (2d) 46, an action was brought for injuries, and error was assigned to the refusal of the court to admit a statement allegedly given to an insurance adjuster. The appellate court in holding that the refusal was not error said:

"The defendant, at the trial of the case, sought to offer in evidence a statement alleged to have been given by the plaintiff to his insurance carrier. The plaintiff admitted that the signature on the statement was his own, but stated that the facts set forth in the same were not as given by him to the adjuster who called on him. The defendant made no attempt to call the insurance adjuster who took the statement, to testify as to its correctness. The court sustained the objection to its admission. We see no error in this as the ground had not been laid for its admission, in view of the denial by plaintiff of its correctness."

In the case of *Altieri v. Public Service Ry. Co.*, 103 N. J. Law, 351, 135 Atl. 786, in which the admissibility of a statement was in question, we find the following language:

"In this situation, we are of the opinion that the exclusion of the paper was proper. If the defendant had desired to impeach the testimony of the witness while on the stand, it should have called the party who wrote the statement, or some one else having knowledge of the facts, to testify that it contained a true account of what the witness had then said. In the absence of such proof, the statement was not evidential for the purpose of impeaching the credit of the witness."

Where the record shows, as it does in this case, that the plaintiff signed a statement typewritten presumably by an agent of the defendants and it appears that upon it being shown to the plaintiff he testified that he did not read it, could not read it and did not know what was written in the statement, this statement is inadmissible without further foundation. Ordinarily, the proper foundation for the admission of such a statement must be made by calling the person who procured the statement and establishing by him that it was correctly typed or correctly read to or by the plaintiff and contains the statements made by the plaintiff. We hold that exhibit No. 6 offered by the defendants was properly excluded by the trial court on the ground of the insufficiency of the foundation laid for its introduction. In this connection see: *Curtis v. Ficken*, 52

Idaho, 426, 16 Pac. (2d) 977; *Belskis v. Dering Coal Co.*, 246 Ill. 62, 92 N. E. 575; *Wisniewski v. New York Central R. Co.*, 228 App. Div. 27, 238 N. Y. Supp. 429.

The last error assigned relates to the refusal of the court to permit a witness to testify concerning his opinion of the direction of the force which caused the damage to the truck. If the witness was competent to testify it would be as an expert and this kind of testimony is only received where the subject-matter is complicated and embraces matters not of common knowledge. It is not to be used where the subject of inquiry does not call for special skill, knowledge or experience. The offer of proof would indicate that had the witness been permitted to testify he would have stated that the force came from the left, striking back of the cab or truck. This conclusion would be obvious to a casual observer of the truck. The offer of proof indicates the answer to be a patent observation at once discernible by a casual glance. It did not relate to a subject of inquiry calling for expert testimony. The exclusion of the testimony was not prejudicial for the reason that it would not be probative of the location of the vehicles on the highway, since the conclusion of the witness would be reconcilable with the theory of the case of both the plaintiff and defendants. The condition of the vehicles after the accident was before the jury and is presumed to have been considered by them together with all the evidence adduced at the trial. It was not error under the circumstances to refuse to permit the witness to draw his conclusion as to the direction of force causing damage to the truck.

We find no prejudicial error calling for a reversal of the case. The judgment is accordingly

AFFIRMED.