834

ELSIE I. RUEGER, APPELLEE, v. W. A. HAWKS, FIRST AND
REAL NAME UNKNOWN, APPELLANT, IMPLEADED WITH
HARRY N. SPENCER, APPELLEE.

36 N. W. 2d 236

Filed March 3, 1949.   No. 32488.

*Votava, McGroarty & Sklenicka* and *Fred Komarek,* for appellant.

*Gross & Welch* and *Harold W. Kauffman,* for appellee Rueger.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law to recover damages for personal injuries sustained by the plaintiff as the result of an automobile collision. The pleadings are of importance in determining this appeal and a summary thereof is deemed necessary.

Plaintiff's petition filed January 2, 1947, alleged that she is a resident of Kansas; that the defendant W. A. Hawks is a resident of Bruning, Thayer County, Nebraska, and that the defendant Harry N. Spencer is a resident of Douglas County, Nebraska. The petition further alleged that on November 17, 1946, the plaintiff was riding as a passenger in the front seat of an automobile owned and operated by her husband, proceeding generally southward on U. S. Highway No. 6; that the truck of the defendant W. A. Hawks traveling northward on the highway struck the car of the defendant Spencer, also traveling northward, and threw the Spencer car into the path of the car in which the plaintiff was riding, injuring the plaintiff. The petition charges negligence and concurrent negligence of the defendants as follows: That the defendant Spencer passed the defendant Hawks immediately prior to the collision and in so doing failed to keep a proper lookout for traffic coming in the opposite direction, and particularly for the car in which the plaintiff was riding; in failing to have his car under

proper control; in driving at a high and excessive rate of speed, at a speed that was greater than was reasonable and proper under conditions of traffic on the highway; in failing to give a warning or signal of intention to change his course and to pass the truck; that the defendant Hawks was operating his truck at the time of the collision at a high, careless, and negligent rate of speed, at a speed that was greater than was reasonable and proper under the conditions of traffic on the highway; in failing to have his truck under proper control; in failing to keep a proper lookout for the car in which the plaintiff was riding and the Spencer car; and in failing to apply his brakes and to avoid driving into and against the Spencer car and knocking it across the highway.

On February 21, 1947, the defendant Hawks filed a motion to make the plaintiff's petition more definite and certain. On the 5th of March 1947, the court sustained the motion in part and overruled it in part; on application of the plaintiff, granted leave to the plaintiff to amend the petition instanter by interlineation, and granted the defendant Hawks ten days in which to answer.

On March 14, 1947, the defendant Hawks filed his answer which admitted that there was a collision; denied generally the allegations of the plaintiff's petition; alleged that he was driving his truck in a careful manner and was not guilty of any negligence whatsoever; that the collision and any damage sustained by the plaintiff was caused wholly by the joint and concurring negligence of the plaintiff and her husband, and the defendant Spencer; that the plaintiff's negligence was, as a matter of law, more than slight; and prayed for a dismissal of the plaintiff's petition.

On March 25, 1947, the defendant Harry N. Spencer filed an answer which admitted certain allegations of the plaintiff's petition and that a collision occurred; denied generally other allegations of the plaintiff's petition not admitted; alleged that he was driving his car in a careful

and prudent manner and at a moderate rate of speed; that he was not guilty of any negligence whatsoever which caused or contributed to the collision; that the collision and any damage sustained by the plaintiff were wholly and exclusively by joint and concurring negligence on the part of the plaintiff and her husband, and the defendant W. A. Hawks; that the negligence of each of said parties was, as a matter of law, more than slight; and prayed that the action be dismissed as to him.

Thereafter the defendant Hawks took the depositions of the plaintiff and her husband, and on April 24, 1947, 26 days after taking said depositions and more than six months before trial, filed an amended answer by leave of court, repeating the substance of the original answer and in addition thereto alleged that the court had no jurisdiction of this answering defendant; that this defendant was a resident of, and was served with summons in this action in, Thayer County, Nebraska; that the collision pleaded in plaintiff's petition occurred in Sarpy County, Nebraska; that the defendant Spencer was a resident of Douglas County, Nebraska; and that there was no joint liability of this defendant and the defendant Spencer.

At the close of all of the evidence the defendant Spencer moved for a directed verdict on the ground that the evidence was insufficient to establish any of the allegations of negligence in the plaintiff's petition as against him. The defendant Hawks moved for a directed verdict on the ground that the plaintiff failed to adduce sufficient competent evidence to establish a cause of action against him, and for the further reason that the plaintiff had failed to produce evidence to show any joint liability of the defendants Hawks and Spencer. The case was submitted to a jury resulting in a dismissal as to the defendant Spencer and a verdict in favor of the plaintiff as against the defendant Hawks. Separate motions for new trial and for judgment notwithstanding the verdict were filed by the defendant Hawks, both of

which motions were overruled. The defendant Hawks perfected his appeal to this court.

For convenience the appellant will be referred to as originally designated in the trial court as defendant, and the appellee as originally designated therein as plaintiff. The defendant Spencer, having been dismissed of any liability by the jury, will be hereafter referred to as Spencer, and his car either the Spencer car or the Ford.

The defendant contends that the trial court erred in failing to sustain the aforesaid motions made in his behalf to dismiss the action as to him, for the reason that the plaintiff's petition alleged joint and concurring negligence on the part of the defendant Spencer and the defendant, however, when plaintiff's deposition was taken it became apparent that the defendant Spencer was merely aiding the plaintiff, and the action was against this defendant only. Error in this respect is urged for the further reason that the plaintiff failed to offer or prove evidence on the allegations of her petition heretofore set out wherein the defendant Spencer was charged with negligence in passing this defendant's truck immediately prior to the collision, and gave her driver no warning or signal of his intention to change his course; that by such allegations of the petition there was no point in the defendant questioning the jurisdiction if he agreed to the facts as pleaded by the plaintiff, and the same constituted his version as to how the collision occurred; and that the situation in the instant case is one where lack of jurisdiction does not appear on the face of the record. Defendant relies on Peters v. Pothast, 120 Neb. 208, 231 N. W. 805, and cases cited therein as controlling.

In the cited case this court held: "Where a joint liability is alleged in the petition against a resident defendant and a defendant in a county other than where the action is commenced, and the jurisdictional defect does not appear on the face of the record, the nonresident defendant may challenge the jurisdiction of the court

over his person, together with such other defenses as he may have, in the answer, without raising the jurisdictional question by special appearance or other preliminary pleading."

No issue can be taken with the defendant's proposition that it is proper to raise the question of jurisdiction and venue in the answer and without filing a special appearance where those questions cannot be determined on the face of the record. It is apparent that defendant contends that he objected to jurisdiction over his person as soon as required.

This court, in the case of Williamson v. Williamson, 120 Neb. 40, 231 N. W. 506, said: "A party may raise the question of jurisdiction over his person for the first time in his answer. If instead of answering he files a motion attacking the petition, he thereby waives the question of jurisdiction over his person." This opinion also contains the following pertinent language governing such a situation: "It is a well-established rule in Nebraska that by filing such motion the defendants submitted themselves to the jurisdiction of the court and waived any irregularity or defect in obtaining jurisdiction over them. Bankers Life Ins. Co. v. Robbins, 59 Neb. 170, and Lillie v. Modern Woodmen of America, 89 Neb. 1. This rule is in conformity with good judgment, for naturally it would be useless for the court in Lancaster county to spend its time examining the petition persuant to defendants' motion if the court did not have jurisdiction over the persons of the defendants." See, also, Richards v. Estate of Gilmore, 140 Neb. 165, 299 N. W. 365; Richards v. Goldstein, 124 Neb. 438, 246 N. W. 925; Crowell and Crowell v. Galloway, 3 Neb. 215.

In Baker v. Union Stock Yards Nat. Bank, 63 Neb. 801, 89 N. W. 269, 93 Am. S. R. 484, this court said: "* * * where, for some reason, the defendant is privileged from suit in the county where or at the time when he is sued, he may set up want of jurisdiction by answer, along with any other defenses he may have. * * * But while the

defense set up in the amended answer was one that might properly be raised by answer in conjunction with other defenses, and while no preliminary objections were necessary to enable it to be so raised, we think it is the duty of a defendant in such cases to plead the want of jurisdiction as soon as called upon to answer. If he answers without so doing, we think he can not afterwards make the defense in an amended answer."

The plaintiff's petition adequately discloses that the plaintiff was seeking to hold both defendants jointly and severally, but regardless, under the afore-cited authorities, the defendant entered a general appearance and invoked the jurisdiction of the court to determine the issues involved in the pleadings. The defendant's contention is without merit.

The record establishes the following facts. The plaintiff and her husband left Omaha enroute to their home in Marysville, Kansas, about 4 p. m. November 17, 1946. The husband was operating a 1937 Chevrolet coach. The plaintiff was sitting to his right in the front seat. They proceeded southward on their proper side of the road which was U. S. Highway No. 6, a concrete highway 20 feet in width between Omaha and Lincoln. The day was clear and the pavement dry. The defendant Harry N. Spencer, Sr., with his two minor children Harry N., Jr., and Frankie Ann both aged about six years, had been outing at Trussell lake near Gretna, Nebraska. This defendant proceeded from such point driving a 1931 Model A Ford equipped with what is known as "bumperettes" consisting of two light bumpers which curve around the back or rear part of the car. He was proceeding in a northward direction toward Omaha on his right side of the highway. Harry N. Spencer, Jr., was in the back seat, and Frankie Ann Spencer was seated to the right of her father in the front seat. The defendant Hawks was driving a 1946 ton-and-one-half, straight body type Dodge truck equipped with dual

wheels in the rear and single wheels in the front which, at the time, was loaded with 11 head of cattle making the total weight of the truck and its contents a trifle in excess of 16,000 pounds. The cattle were owned by one Ernest Schulte who was accompanying Hawks taking them to market. The cab of the truck was painted red, the hood red, and the fenders and the bumpers black. The truck and its occupants were proceeding northward toward Omaha on their own right side of the highway.

About 5:30 or 5:45 p. m., at dusk with the visibility good, the plaintiff's husband had the headlights of the Chevrolet turned on; Spencer had the lights of the Ford car turned on; and the defendant Hawks had the clearance lights of his Dodge truck turned on.

At a point north of Gretna the Burlington railroad tracks ran underneath the highway slightly to the southwest from the northeast. The highway, as it passes over the Burlington tracks, runs straight north and south for a distance of about 100 feet. The contour of the road in this vicinity is a gradual curve which approaches the railroad tracks toward the southwest. There is one turn to this single curve. The pavement slopes toward the northeast and constitutes a gradual down slope. The accident occurred approximately 600 feet east toward Omaha from the Burlington overpass north of Gretna.

Facts in controversy are in substance as follows: The plaintiff's husband, just prior to the time of the accident, was in the process of negotiating the curve, driving at a rate of speed of 35 to 40 miles per hour. There were no cars in front of him proceeding in the same direction. About 300 feet in front of him he observed a car and a truck approaching. The truck was behind the car and they were proceeding northward, each on its own side of the highway, which was the opposite side of the highway from him. He noticed the clearance lights of the truck even though there was sufficient light so that he could see the truck in any event. He continued to observe the car

which later developed to be the Spencer car and the truck which later developed to be the Hawks truck, and did not see the Spencer car pass or attempt to pass the Hawks truck nor the Hawks truck pass or attempt to pass the Spencer car. He observed that the Hawks truck was getting closer to the rear of the Spencer car and was about 50 feet behind it. He estimated the speed of the Spencer car prior to the accident at 35 miles per hour and the speed of the Hawks truck as the same, but testified that the Hawks truck kept gaining on the Spencer car. Suddenly the Spencer car came across the highway at an increased speed and struck the Chevrolet coach head-on, stopping it immediately. The driver of the Chevrolet coach was dazed by the impact. When he got out of his car it was headed toward Lincoln on its right side of the highway in the same position as at the time of the impact. The defendant Spencer was lying on the pavement beside the Chevrolet in an unconscious condition. The Spencer car was four feet to the rear of the Chevrolet on its top with all four wheels in the air, and was across the center line of the highway, facing toward the west.

The plaintiff testified that she first observed the Spencer car about 300 feet distant from the car in which she was riding, coming from the opposite direction at a speed of approximately 35 miles per hour. The Hawks truck was behind the Spencer car. She noticed the clearance lights on the truck; that the Spencer car continued at the same rate of speed up to the time of the accident; and that the truck kept getting closer to the Spencer car at all times. She did not base an opinion as to the speed of the truck. The last time she noticed the Spencer car and the Hawks truck, the truck was within 50 feet of the Spencer car and trailing at all times she observed it. When the Chevrolet in which she was riding got even with the Spencer car, the Hawks truck was still behind it. She observed no movement of the truck or the Spencer car that would indicate either was going to cross the highway to the opposite side. Then

the Spencer car seemed to get out of control and came across the center line of the highway at a rapid rate of speed striking the Chevrolet.

Harry N. Spencer, Jr., testified that he remembered riding in the back seat of his father's car and looking out the back window. He testified that the Hawks truck which he was watching struck his father's car and threw it across the highway where it struck a car approaching from the opposite direction. The three occupants of the car in which he was riding were thrown out of the car. He further testified that his father did not pass any truck before the accident nor at the time thereof. He testified to the position of the Chevrolet and the Spencer car after the accident.

Frankie Ann Spencer testified she was riding with her father in the front seat of the Ford; that he did not pass a truck at the time of the accident nor did she see any truck in front of or beside their car before the accident; and that all at once her father's car went across the highway onto the other side and smashed into the car approaching from the opposite direction in which the plaintiff was riding.

The defendant Harry N. Spencer, Sr., testified that at the time of the accident he was driving at a speed of between 25 to 30 miles per hour, did not pass a truck up to the time of the accident, and had no recollection of the accident. He further testified that his car was in a defective mechanical condition which lessened its power.

A state patrolman arrived at the scene of the accident at 6:06 p. m. He observed the Hawks truck partly on the right shoulder of the highway headed toward Omaha. He corroborated the testimony of other witnesses with reference to the position of the Chevrolet and the Ford after the accident.

The defendant Hawks testified that he was operating the truck on its proper side of the highway at a speed of from 30 to 35 miles per hour. When he first saw the Spencer car it was alongside the door of the truck

and was proceeding faster than the truck. He estimated the speed of the Ford at from 45 to 50 miles per hour. The highway curved at this point and he endeavored to pull over a little to the right side thereof, and did. He first observed the Chevrolet coming from the opposite direction at a distance of better than 100 yards, just as the Ford passed and went around his truck. The right rear bumper of the Ford hooked the left side of the front bumper of the truck. Immediately thereafter the Ford proceeded ahead a short distance and then went diagonally across the highway to the left. After the Ford hooked the bumper of the truck Hawks slammed his brakes on and turned his wheels to the right traveling a distance of about 20 feet endeavoring to go to the right off the pavement. The right side of the truck was off the pavement on the shoulder and the left side thereof was on the ridge when he brought the truck to a stop about 60 feet distant from the other two cars. On cross-examination he testified that the Ford proceeded across the highway to the other side, demolished the Chevrolet, came back across the highway high in the air landing on top of the truck, and then proceeded across the highway again to the west side thereof and lay on its side. He estimated that the hood of the truck stood about 4 or 5 feet in height from the pavement.

The witness Schulte was sitting to the right of Hawks in the cab of the truck and was not able to see the left part of the front bumper of the truck. He testified that he saw the Ford when it was even with the truck and then at the time it went around it. It looked to him as if the driver of the Ford was having difficulty, as it was curving in. The back part of the Ford struck the front bumper of the truck, and the Ford proceeded across the highway to the west and thereafter bounced back on top of the truck.

From the evidence it appears that the right front part of the Spencer car at the time of the impact came

into contact with the left front part of the Chevrolet, demolishing the whole front end and one side of the body thereof. The car could not be repaired and had to be junked. The front end of the Spencer car was mashed, the top was mashed in, the rear fender was bent, and there was testimony to the effect that there was red paint on the bumper and taillight which looked like a fresh mark. The left door, left cowl panels, cowl and cab alignment, the door glass and parking-light units of the truck were damaged. The sealed headlight units, the hood, and left front fender required repair. There was no damage to the grille. The truck was equipped with a braced steel bumper which was pulled toward the front and the "U" irons, a part of the bumper, were broken from the back leaving the front part thereof intact. The fender was pulled away from the cab, and there was a small crease on the top thereof toward the headlight. Most of the damage was to the rear part of the fender where it buckled away from the body. The hood was twisted out of line and the left door was mashed.

A witness engaged in the livestock commission business, together with his son, stopped at the scene of the accident and assisted the patrolman in flagging traffic. This witness and his son observed the truck and identified the bumper as a heavy steel one which was pulled straight ahead toward the front left side of the truck.

The defendant contends the trial court erred in permitting the minors, Harry N. Spencer, Jr., and Frankie Ann Spencer, to testify, for the reason that no sufficient and proper foundation was laid for the admissibility of this testimony, and proper objection was made as to the competency thereof, which was overruled.

In this state no age is fixed by statute below which a child is presumed to be incompetent to testify. See Evers v. State, 84 Neb. 708, 121 N. W. 1005.

There is no precise age which determines the question

of a child's competency, it depending upon his capacity and intelligence and his appreciation of the difference between truth and falsehood. A child may be a competent witness although he is very young, where he has sufficient intelligence to receive just impressions as to the facts of which he is to testify and to relate them correctly. The question of the competency of such a witness rests largely in the sound discretion of the trial court, whose decision will not be disturbed in the absence of clear abuse. See, 70 C. J., Witnesses, § 122, p. 92; 58 Am. Jur., Witnesses, § 129, p. 97.

In Abbott v. State, 113 Neb. 517, 204 N. W. 74, it was held: "Where a preliminary examination by the trial court shows that a female child is a competent witness, she should not be prevented from testifying merely because she is only six years of age."

In Davis v. State, 31 Neb. 247, 47 N. W. 854, this court held: "A child possessing sufficient capacity to understand the nature and obligations of an oath is a competent witness."

In the instant case, at the time of the accident the two minor children in question were nearly six years of age, and at the time of trial were nearly seven years of age. From an examination of the record we hold that the trial court did not abuse its discretion in permitting these minor children to testify, and defendant's predication of error in such respect is not well taken.

The defendant contends the trial court erred in overruling his motion for a directed verdict or a dismissal of the action as against him for the reason that the plaintiff, though testifying to all facts and details of the collision, by her own testimony failed to establish a right of recovery against this defendant. In this connection, without repeating the entire evidence of the plaintiff a major part of which appears heretofore, it apparently is the defendant's contention that the plaintiff abandoned all effort to make a case against the defendant

Spencer for the reason that the plaintiff's testimony shows that this defendant's truck was following the Spencer car and at all times was a distance of 50 feet behind it, and there was not a time when the gap between the Spencer car and the defendant's truck was closed. In addition thereto, the defendant argues that the plaintiff's husband, although watching the truck and the Spencer car coming toward him at all times, did not see the defendant's truck strike the Spencer car; and that the only evidence which purported to prove the truck struck the Spencer car was the evidence of the witness Harry N. Spencer, Jr.

As to the right of a party to the benefit of other evidence than his own, in contradiction of his own self-injuring statements, (if the testimony of the plaintiff in the instant case can be so considered) there is great confusion and conflict among the jurisdictions and as to particular types of testimony. Under the older practice and prevailing rule, a party is entitled to the benefit of the testimony of other witnesses in contradiction of his own, wherever his own is not of the character of a judicial admission, and concerns only some evidential or constituent circumstance of his case. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is especially subject to inexactness of observation and memory. See annotation in 169 A. L. R., p. 809. See, also, Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A. L. R. 619; Cox v. Jones, 138 Or. 327, 5 P. 2d 102; McFaden v. Nordblom, 307 Mass. 574, 30 N. E. 2d 852.

In the instant case the plaintiff's testimony is not inconsistent with the evidence as a whole. She testified as to what she actually observed, and the fact that she did not see the Hawks truck strike the Spencer car or just what did occur at the time of the collision does not preclude her from recovery when there is other competent evi-

dence as to what did occur at such time. She testified she observed the Spencer car coming at a high rate of speed across the highway and striking the car in which she was riding. The witness Harry N. Spencer, Jr., testified to his observation as to how the accident occurred, which is not inconsistent with the plaintiff's testimony but in fact corroborates and ties in with it. We believe the evidence as a whole constitutes a question for the jury as to how the accident happened and which party's negligence caused the accident and the damages resulting therefrom. Therefore, the foregoing contention of the defendant cannot prevail.

The defendant contends the trial court erred in not directing a verdict and dismissing the action as to him for the reason that the undisputed physical facts demonstrate that the collision out of which the plaintiff sustained injuries was not caused by negligence of this defendant, citing Hessler v. Bellamy, 128 Neb. 571, 259 N. W. 514, and other cases to like effect.

This assignment of error is based on the testimony of witnesses who observed that the left part of the front bumper of defendant's truck was pulled straight forward. In furtherance of such testimony defendant argued that considering the weight of the bumper, its position and the manner in which it was fastened by "U" irons which were broken, and the grille not being damaged, the only way in which the accident could happen would be that when the Spencer car passed defendant's truck it locked the left part of the front bumper thereby pulling it directly forward; that the bumper was black in color and the hood of the truck was red, so if there were any red paint marks on the Spencer car they came from the hood of the truck; and that the foregoing facts corroborate defendant's and the witness Schulte's testimony as to how the accident occurred, which could not be denied by the physical facts. The evidence is in controversy as to how the accident happened, and is in controversy with

reference to the physical facts as to the manner in which the accident happened.

It is the rule in this jurisdiction that physical facts may not be accepted as a matter of law or as ground for refusal to submit a case to a jury as against the testimony of witnesses on a controverted fact question, unless they are demonstrable to a degree that reasonable minds cannot disagree concerning their existence, and unless the results flowing therefrom are demonstrable to the same degree agreeable to the known and immutable laws of physics, mechanics, or mathematics. See, Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766; Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651.

The following authority is pertinent to the instant case: "Where, however, there is a reasonable dispute as to the pertinent physical facts, the conclusions to be drawn therefrom are for the jury, and a verdict based thereon will not be disturbed unless clearly wrong." Moore v. Krejci, 139 Neb. 562, 297 N. W. 913. See, also, Pruitt v. Lincoln City Lines, *supra.*

We conclude the defendant's contention in such respect cannot be sustained.

The defendant contends the trial court erred in permitting the plaintiff's physician to testify as to what certain X-ray pictures taken of the plaintiff would show with reference to injuries she received at the time of the accident, when the same were not offered or received in evidence.

It appears that the X-ray pictures were available to appellant's counsel who saw them, but contended they were not available for exhibits for the purpose of the record. Objection was made to this line of testimony for the reason that no proper foundation was laid, and such testimony constituted a conclusion of the witness. Motion to strike such testimony for the same reason was also made. The defendant introduced certain X-ray pictures in evidence from which his medical expert testi-

fied, and it is clear that both the plaintiff's physician and defendant's expert are in agreement that the plaintiff suffered a fracture of the second cervical vertebra. Their disagreement is as to the extent of the fracture, whether or not it is entirely healed, whether or not plaintiff has any permanent injury, and the treatment, as to the necessity of wearing the neck brace.

The record discloses the court did not definitely rule on the defendant's objections and motion to strike, but reserved his ruling and agreed to rule later in the course of the trial, which the court did not do. The court's attention was not called to the objections and motion to strike so made by the defendant, nor was the court requested to make a ruling thereon, nor was the court's attention directed to the fact that he had reserved his ruling. Under such circumstances, the rule is well established that where the trial court admits evidence over objection, on the promise of counsel that he will make it competent by the introduction of connecting evidence, or where he conditionally sustains or overrules an objection to the introduction of evidence because he is unable to decide the question of its competency at the time, and no further ruling is requested or made, the question as to the competency of the evidence cannot be raised on appeal. In other words, the general rule is that when a ruling on objection to evidence has been reserved, the objecting party must obtain a direct decision or ruling in order to preserve the objection for review. See annotation in 48 A. L. R., pages 487, 488, and 494. See, also, 4 C. J. S., Appeal and Error, § 322, p. 657; Federal Schools v. Barry, 195 Iowa 703, 192 N. W. 816; McManus v. Chicago G. W. Ry. Co., 156 Iowa 359, 136 N. W. 769; Naas v. Welter, 92 Minn. 404, 100 N. W. 211; Thornton v. Davis, 113 Neb. 529, 204 N. W. 69; Chicago, St. P. M. & O. R. R. Co. v. Lundstrom, 16 Neb. 254, 20 N. W. 198, 49 Am. R. 718; Plath v. Brunken, 102 Neb. 467, 167 N. W. 567.

We conclude the trial court did not commit prejudicial error as contended for by the defendant.

The defendant contends the verdict in the amount of $5,250 is so excessive as to indicate passion and prejudice on the part of the jury.

The record shows that in addition to a fracture of the second cervical vertebra the plaintiff suffered a cut in her forehead, and immediately following the accident had pains in the back of her neck and through her shoulders, and severe headaches. She suffered a severe blow to her head which produced a concussion of the brain. When she was removed to her home a few days after the accident she was in bed for a week, and was unable to do her housework for a period of time, and, under her physicians instructions, was required to wear a neck brace day and night for a period of three months and in the daytime for one month thereafter. This brace interfered with her rest and her sleep, and prevented her from attending to washing her neck, combing her hair, or doing her housework without suffering pain. Housework tired her up to the time of the trial. She suffered nervous shock due to the accident, was on a tension, and also afraid to ride in automobiles. Eight years previous to this accident she was in an automobile accident which resulted in minor injuries to her nose. Prior to the accident in this case her health was good. She was 32 years of age. At the time of the trial she was apparently doing her own housework. Her arms, shoulders, and down the back of her neck still bothered her when she was required to do extra work. A change in the weather was when it bothered her most.

Defendant's medical expert testified that the statement of the plaintiff that the weather caused her discomfiture is a fair statement to make with reference to any fracture for a period of possibly a year, or even two years.

The plaintiff's attending physician testified to seeing and administering to her on five occasions. He gave as his opinion that the plaintiff would have pain in her

neck, with a slight limitation of motion; that the laceration on her forehead was 2½ or 3 inches in length and would leave a permanent scar. Defendant's medical expert testified that the fracture of the second cervical vertebra had healed completely and that there was no evidence of permanent disability.

In an action sounding in damages merely where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. See Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396.

This court is committed to the rule: "A verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law." Horky v. Schroll, *supra.*

In Sutton v. Inland Construction Co., 144 Neb. 721, 14 N. W. 2d 387, it was said: "No method of exact computation can be devised in determining compensatory damages in cases of this kind. We think the evidence was such that the jury could properly arrive at the amount determined upon by them. We can find no yardstick whereby we can say as a matter of law that the verdict was excessive. Under such circumstances this court may not substitute its judgment for that of the jury, even if it be assumed that this court would determine that a lesser amount would constitute adequate compensation for the injuries sustained."

For the reasons heretofore stated, the judgment of the trial court is affirmed.

AFFIRMED.

PAINE, J., not participating.