HARRY RICHARDS, APPELLEE, V. ESTATE OF ANNA GILMORE ET AL., APPELLANTS.
299 N. W. 365

FILED JULY 18, 1941. No. 31124.

*T. R. P. Stocker,* for appellants.

*Robert M. Armstrong, contra.*

Heard before ROSE, EBERLY and YEAGER, JJ., and THOMSEN and WENKE, District Judges.

THOMSEN, District Judge.

On a garnishment issued out of the county court at request of the administratrix with will annexed, Harry Richards, entitled the plaintiff in this cause, intervened, claiming ownership of the fund. He filed his petition of intervention, the defendant administratrix filed her answer, followed by a reply, and the court heard and determined the respective claims in conformity with the rule: "Where the court obtains jurisdiction of a fund by garnishment proceedings, it necessarily follows that the claims of all persons claiming an interest in the fund should be heard and an order entered determining their respective rights thereto. While it is true that the court's jurisdiction over a fund in the hands of a garnishee is determinable from the answer of the garnishee, yet, if jurisdiction does attach, the determination of the interests of all the parties is for the court." *Orchard & Wilhelm Co. v. North*, 135 Neb. 39, 280 N. W. 272. The court found that the fund was the property of the plaintiff and ordered payment to him, and further required the administratrix to restore $75 previously collected from the garnishee on prior garnishments. The administratrix appeals.

The controversy arises over a real estate contract made by Anna Gilmore with Lee Kelligar, a lawyer of excellent repute at Auburn, Nebraska. The contract was made February 23, 1935. By it she sold her house for $5,000, $500 in cash and the remainder at the rate of $25 a month. Among the provisions, Kelligar should pay the taxes, keep property insured and repaired, and in the event of his failure promptly to pay a strict foreclosure would follow. The contract was drawn by Kelligar in consultation with Mrs. Gilmore and her brother, Harry Richards. Under its terms the seller deposited a warranty deed, properly executed, with the Carson National Bank of Auburn, Nebraska, "said deed to be delivered to second party (the buyer) when this contract has been fulfilled in all its terms and full payment

made." Kelligar paid regularly to Mrs. Gilmore until her death, October 23, 1938.

The contract also provided: "It is further agreed between the parties hereto that in the event of the death of party of the first part all payments remaining unpaid and any and all covenants of this agreement to be kept and performed by second party will, by second party be made, kept and performed to and in favor of Harry Richards of Mexico, Missouri, and in the event of his death before the completion of the terms of this contract, all payments and covenants hereof will be made and kept with the heirs at law of Harry Richards." After Mrs. Gilmore's death payments were made to Harry Richards of Mexico, Missouri, until garnishment by the administratrix.

Defendant contends that a determination of the litigants' rights involves the "title to land" and that this is "an action upon a contract for the sale of real estate," subjects forbidden by statute to the jurisdiction of the county court. Under familiar equitable principles, where the owner of real estate enters into a valid contract for the sale thereof, the real estate is regarded as converted into personalty and it is so treated when the vendor dies. *Davie v. Davie*, 47 Wash. 231, 91 Pac. 950; Annotation, Ann. Cas. 1914D, 419; 19 Am. Jur. 11, 15, secs. 11, 15. Thus, not the title to land but the right to personal property, the money to be paid by vendee, is here involved. Neither is this an action between the parties to a contract for the sale of real estate in which their rights or liabilities between themselves are involved. This is a contest between two rival claimants to a fund unquestioned in amount in which the vendee has no interest except as stakeholder. The county court is a proper forum for the hearing.

Notice of the filing of the petition of intervention was served on Nellie Bellas without her designation as administratrix of the estate with will annexed. Defendant filed a special appearance objecting to the jurisdiction of the court over her person. Assuming, without deciding, that service of such notice was necessary under all the conditions, the

defendant waived her objection by filing a motion to strike and to make parts of the petition more definite, and, moreover, by objecting to the jurisdiction of the court over the subject-matter. *Cropsey v. Wiggenhorn,* 3 Neb. 108; *Crowell v. Galloway,* 3 Neb. 215; *Healy v. Aultman & Co.,* 6 Neb. 349; *Hurlburt v. Palmer,* 39 Neb. 158, 57 N. W. 1019; *Burlington Voluntary Relief Department v. Moore,* 52 Neb. 719, 73 N. W. 15; *Kyd v. Exchange Bank of Cortland,* 56 Neb. 557, 76 N. W. 1058; *Baker v. Union Stock Yards Nat. Bank,* 63 Neb. 801, 89 N. W. 269; *Stelling v. Peddicord,* 78 Neb. 779, 111 N. W. 793; *Williamson v. Williamson,* 120 Neb. 40, 231 N. W. 506; *Troyer Furniture Co. v. Orchard & Wilhelm Co.,* 121 Neb. 301, 237 N. W. 144.

The administratrix is the only beneficiary under the will of Anna Gilmore. The amount which she claims is $300 due to her on a note signed by the deceased's husband, who died before Anna Gilmore's demise. If her claim were paid, all the remainder of the estate would descend to Harry Richards, the brother. The claimed will is dated June 28, 1938, less than four months before the testatrix died and more than three years after the contract with Mr. Kelligar was signed. The whole of the will found in the bill of exceptions is as follows: "I feel I desire the principal of note given by W. A. Gilmore to Miss Nellie Bellas paid on my death. I, therefore, request Lee Kelligar to pay to Miss Nellie Bellas a total of $300. This is to be paid out of the $25.00/100 per month due me on the sale of my former home and being purchased by Lee Kelligar. This memo is to be the authority of Lee Kelligar to make such payment and on the payment of the $300 to Miss Bellas, Mrs. Cline is to turn this order over to Mr. Lee Kelligar." This document was admitted to probate as the will of the deceased, and no appeal having been taken therefrom, it must be considered as the will of the deceased.

It is contended by the defendant that "Anna Gilmore believed and understood that said contract provided for and left said property and the proceeds thereof subject to her use, benefit and control, and that she had a right to dispose

of the same as she saw fit, by will or otherwise, and that said contract was ambulatory, and at all times subject to her control and change as to the disposition of the proceeds of said property and the control thereof. That the provision with respect to the said monthly payments under said contract after her death to the said Harry Richards' by Lee Kelligar was only intended to be made to him as her agent, and at all times subject to her right to change and control the same by will or otherwise." The only evidence offered to support this claim is in the testimony of the witness Mrs. Frank Cline who, after reciting that Mrs. Gilmore had stated at the hospital that she wanted Miss Nellie Bellas paid, said: "Q. Did she tell you from what source she wanted it paid? A. Yes, sir; she felt she had no money, she never could have the three hundred, that it had gone and could it be arranged to be paid out of the twenty-five dollars that was coming in from the house, Mr. Kelligar was paying each month. Q. Did she indicate to you that she thought the house belonged to her or somebody else? A. Yes, sir; she felt the house belonged to her." This conclusion of the witness Cline is far from establishing the claim made by the defendant. Moreover, the evidence and circumstances overwhelmingly establish that Mrs. Gilmore understood the full import of the contract when made, and that the provision for payment of any amount remaining after her death was at her request. No other attempt to change beneficiary is shown in the record. When the contract was made Mrs. Gilmore was well and strong, taking care of a ten-room house and a sick mother; when the attempted change was made she was in the hospital afflicted with cancer of which she died in a few months. A contract for the benefit and with knowledge and assent of a third person cannot ordinarily be changed without the consent of the beneficiary. *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056; and particularly true when the beneficiary had acted on the contract. 17 C. J. S. 857, sec. 373; Annotation, 53 A. L. R. 181; 4 Page, Contracts, sec. 2394; Restatement, Contracts, sec. 142. A familiar application of this rule is in old line life insurance

policies. The beneficiary has a vested interest the moment the contract is made. 2 Couch, Cyclopedia of Insurance Law, sec. 308; Annotation, 62 A. L. R. 940. In some respects the situation is similar to that of a gift delivered to a third person with instructions to deliver to donee on the donor's death, and if the donor parts with control over it and reserves no right to recall it, he thereby makes a final disposition of the property. Annotations, 3 A. L. R. 902, 933; *Novak v. Reeson,* 110 Neb. 229, 193 N. W. 348. Here the beneficiary knew of the existence of the contract and was consulted with respect to its formulation. Furthermore, he later paid to his sister the sum of $15 a month and during her stay in the hospital, except the first three weeks, the sum of $25 a week. Under all the facts and circumstances it seems adequately established that Mrs. Gilmore intended to and did part with control over the disposition of the proceeds of the sale, and that she lost the power to change, partially and wholly, the person who should be the beneficiary; and that the disposition made by her in the claimed will is entirely ineffectual.

Defendant contends that the price obtained for the house is inadequate and that the sale was procured by fraud on the part of Richards; that the latter stood in the position of confidential adviser, and that his action resulted in some detriment to Mrs. Gilmore. It must be remembered that this is solely a garnishment and a determination of the question to whom the money reached by such garnishment belongs; it is not a creditor's bill or a suit against Richards to recover money or property belonging to the estate. On the latter score it must, however, be remembered that the sole heir is Richards, and that after the payment to Nellie Bellas of her claim of $300 all the remainder would go to Richards. No evidence of inadequacy of price or of fraud in the sale of the property is offered in the record. No witness is called to dispute that the $5,000 to be paid by Kelligar is not fully adequate. On the other hand, it seems contrary to good sense that Richards should not want his sister to have the highest possible price, for, if she died, the unpaid balance

would be his. On the general contention that Mrs. Gilmore lost on the transaction the evidence is against the defendant. The sale seems to have been a sensible one; it brought her a definite income for a time, enabled her to go to smaller quarters, suitable for her needs, at less expense for maintenance and heating, and permitted her better to care for her invalid mother.

We have gone through the record and briefs of counsel carefully, with some independent investigation of the law, and we find nothing in the action of the district court contrary to established rules. The judgment of the district court is

AFFIRMED.