GILBERT CENTRAL CORP., APPELLANT, V. OVERLAND NATIONAL BANK ET AL., APPELLEES.

442 N.W.2d 372

Filed July 14, 1989. No. 87-649.

Thomas A. Wagoner for appellant.

Daniel M. Placzek, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee Overland National Bank.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and RIST, D.J.

RIST, D.J.

Plaintiff-appellant, Gilbert Central Corp. (Gilbert Central), brought this action against the defendants, Overland National Bank (Overland) and Western Heights Development Co. (Western Heights), to recover the sum of $61,977.35 for grading and asphalt work done by plaintiff for Western Heights incident to the development of a residential subdivision in Grand Island, Nebraska, known as Western Heights Fourth Subdivision.

Plaintiff in its third amended petition alleges that Overland made a loan commitment to Western Heights for the development of the subdivision in 1981; that plaintiff and Western Heights entered into negotiations for grading and asphalt work in said subdivision and in August 1982 reached agreement in principle for such work; that plaintiff notified defendant Overland by letter of its intention to do the grading and asphalt work, and thereafter, on October 18, 1982, Overland corresponded with plaintiff and advised that it would pay for the same; that plaintiff entered into a contract with Western Heights for the work relying upon Overland's representation for such payment; that the work was completed; and that after Western Heights defaulted in payment, plaintiff made demand upon Overland for the balance due, which demand was refused. Plaintiff seeks to recover such balance from Overland on the basis that the bank is estopped from denying liability for such work by virtue of its loan commitment to Western Heights relied upon by plaintiff and on the basis that Overland would be unjustly enriched. A consent judgment was entered between plaintiff and Western Heights, and this suit continued as to Overland.

Defendant Overland in its answer admits that in 1981 it entered into a general agreement with Western Heights to loan

money for such development; admits that on October 18, 1982, it corresponded with Western Heights concerning the same, but denies plaintiff's characterization thereof; and admits that plaintiff entered into a contract with Western Heights to do the work, but denies all allegations with respect to defendant Overland's alleged liability for the same.

After the matter was at issue between plaintiff and Overland, the bank filed a motion for summary judgment, and on May 7, 1987, the trial court sustained the motion and dismissed plaintiff's petition.

Plaintiff appeals to this court, assigning as error that the district court erred in sustaining Overland's motion for summary judgment (1) in finding that the pleadings did not establish a contract based upon the theory of promissory estoppel existing between plaintiff and Overland, and (2) in finding no issue on the matter of unjust enrichment.

Before dealing with factual issues, there is a preliminary matter of pleading to be considered. Plaintiff alleged in paragraph VI of its third amended petition that

> on or about October 18, 1982, the Defendant, Overland National Bank, corresponded with the Plaintiff advising them that the Defendant, Overland National Bank, would pay the Plaintiff for the grading and asphalt work in the subdivision. A copy is attached hereto, marked Exhibit "B" and by reference made a part hereof.

No exhibit B was attached to the third amended petition. The original petition, however, in paragraph V alleged that "on or about October 18, 1982, the Defendant corresponded with the plaintiff advising them that the Defendant would pay the Plaintiff for the grading and asphalt work in the subdivision. A copy is attached hereto, marked Exhibit 'B' and by reference made a part hereof." An exhibit B was attached to this petition, being a letter dated October 18, 1982, from Overland to Western Heights.

The initial question is whether exhibit B may be considered a part of the third amended petition. The allegations in both the original and third amended petition with respect to this exhibit are essentially identical, and both petitions are a part of the court file reflected in the transcript.

In the case of *Bank of Stockham v. Alter*, 61 Neb. 359, 85 N.W. 300 (1901), the plaintiff's last amended petition made reference to a note and mortgage as exhibits alleged to be attached and by reference made a part of such petition. These exhibits were not so attached, but such exhibits had been attached to an earlier amended petition. The court held at 365-66, 85 N.W. at 302:

Under the system of filings practiced in the district court . . . all such pleadings are preserved, together with the other files in the case, attached to and held together as one complete package or set of filings. The note and mortgage . . . were attached directly to the first amended petition . . . . They were by reference attached to and made a part of the last amended petition, but not physically displaced from the place in the files in connection with the first amended petition. . . . [W]e think their filing in the case as an exhibit, and the reference to and designation of them as such exhibits in the [last amended petition], sufficiently identifies and connects them with the pleading and as a part thereof; so that, in the absence of a motion directed to the same, they will be considered and treated, as they appear to have been in the trial of the case, as a part of the [last amended petition].

The transcript in this case contains both the original petition with the exhibit attached and the third amended petition. The evidence in this case shows exhibit B was considered by the parties as the basis for the liability alleged in paragraph VI of the third amended petition, and it is so argued in the briefs. We therefore consider exhibit B as a part of the third amended petition.

We next consider the issue raised by Overland in its brief, namely, that exhibit B is at variance with paragraph VI of the third amended petition, both as to the addressee of the letter and its contents. As previously set forth, paragraph VI pleads that this was correspondence by Overland with plaintiff and that Overland advised plaintiff it would pay for the grading and asphalt work. Exhibit B is a letter dated October 18, 1982, from Overland to Western Heights, and states as follows:

On September 10, 1981, the Overland National Bank

issued a commitment to Western Heights Development Co. for the purpose of developing 18 acres, subdivided into 27 residential lots.

A portion of this commitment has been reserved to pay the Gilbert Central Corporation in the amount of $63,170.90, for the grading and asphalt work in this subdivision. These funds will be disbursed to Western Heights Development Co. upon completion of the work to the satisfaction of our customer.

It is mutually understood that the bank shall not be obligated to lend funds under this commitment should there be a substantial adverse change in the present financial condition of Western Heights Development Co.

Defendant Overland argues that when an exhibit attached to a petition is at variance with the pleading itself, the exhibit controls. We agree. In *Reller v. Ankeny*, 160 Neb. 47, 53, 68 N.W.2d 686, 690 (1955), this court held:

An exhibit made a part of a pleading by direct allegation to that effect is a part thereof . . . . The contents of such an exhibit prevail over any allegation of the pleading that is inconsistent therewith and such an exhibit may be considered by the court without reference to the legal effect thereof as alleged in the pleading.

Accordingly, since paragraph VI is at variance with exhibit B, we find the exhibit is the alleged basis of the liability claimed in such paragraph VI and prevails over any characterization of such exhibit contained in that paragraph. We note further that the evidence reflects exhibit B is the basis for the claimed liability and that the parties so argue in their briefs.

Turning to the evidence received in the hearing for summary judgment, the record reflects the following: Gilbert Central, formerly Missouri Valley Construction Company, a wholly owned subsidiary of Peter Kiewit and Sons, entered into negotiations with Western Heights in August 1982 to do the grading and asphalt work in Western Heights Fourth Subdivision and submitted a cost estimate to Western Heights for such work. Gilbert Central also discussed with Western Heights the matter of financing the work. Western Heights advised it had a loan commitment from Overland whereby it

could borrow the necessary funds, and Gilbert Central requested some written assurance of such arrangement.

On August 23, 1982, Gilbert Central wrote Overland advising in substance that it had agreed to do the work at a cost of $63,170.90 on the understanding that Overland had committed the necessary funds for it and that Gilbert Central had agreed not to receive payment for the work for 1 year from the date the project was completed and accepted by Hall County. In the meantime, Western Heights had contacted Overland with respect to the loan commitment, and Overland, on October 18, 1982, wrote exhibit B to Western Heights as set forth above. Gilbert Central received a copy of this letter from Western Heights.

On October 18, 1982, after having seen exhibit B, Gilbert Central and Western Heights entered into a contract for the grading and asphalt work, which provided in part for the payment by Western Heights of $63,170.90 in full no later than 30 days following completion of the work.

Gilbert Central performed the work, completing it sometime in early or mid-1983. Hall County, by letter dated December 2, 1983, approved the specific work done for the contract price above noted.

In early December 1983, Western Heights requested the loan from Overland to pay the contract and was refused on the basis of the financial deterioration of Western Heights, and Western Heights reported this to Gilbert Central. On December 7, 1983, Gilbert Central and Western Heights entered into a further agreement to pay the contract, which including interest was now $77,471.69, in monthly installments of $7,747.77. Payments were made in December 1983 and January 1984, and thereafter Western Heights defaulted. Gilbert Central made demand upon Overland for the payment and was refused.

The evidence reflects the following data with respect to Western Heights financial status: (1) the net worth of Western Heights was as follows: August 25, 1982, $138,771; September 9, 1983, $88,000; and September 26, 1984, $10,100; (2) Western Heights' equity in the property in the subdivision was as follows: August 25, 1982, $70,000; September 9, 1983, $28,000; and September 26, 1984, $24,000; and (3) Western Heights'

equity in real estate other than in the subdivision was as follows: August 25, 1982, $74,500; September 9, 1983, $62,500; and September 9, 1984, $36,000.

In July 1985, Overland commenced foreclosure proceedings upon the subdivision property, resulting in a foreclosure sale in August 1986, at which time Overland bid on the property, and the sale to Overland was later confirmed.

Plaintiff, Gilbert Central, admitted it had no direct dealings with Overland respecting the loan to Western Heights except the letter, exhibit B; that the only evidence Gilbert Central has with respect to the loan is such letter; and that Gilbert Central was aware of the limitation in paragraph 3 of that letter at the time it made its contract with Western Heights.

No mechanic's lien was ever filed by Gilbert Central against the property involved.

Since the case comes to us upon the sustaining of a motion for summary judgment for defendant Overland, the question is whether the pleadings and evidence show no genuine issue as to any material fact and that the defendant Overland, as the moving party, is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1985).

The basic issues in this case are (1) is there a genuine issue of fact as to whether plaintiff had a right to rely upon a commitment from Overland to Western Heights for the loan when it made its contract with Western Heights, and (2) if it did, is there a genuine issue of fact as to whether defendant Overland was entitled to refuse to make the loan.

Plaintiff, in support of its claim that the defendant Overland is liable under the doctrine of promissory estoppel, has directed our attention to the case of *Johnston v. State Bank*, 195 N.W.2d 126 (Iowa 1972), in which the Iowa court held that a bank would be liable to a builder where the bank had written a letter to the builder advising of a loan commitment to the owner of the property involved for a building if built pursuant to submitted plans and specifications and to the bank having a first lien thereon. When the bank refused to make the loan after the building had been built, the trial court said that the builder could compel the bank to make the mortgage loan to the owners on the basis of promissory estoppel and that where the bank

had represented to the builder what it would do for the owner, and the builder had reasonably relied upon such representations and performed in accordance with them, the bank could not thereafter change its position to the builder's detriment. The plaintiff in this case claims that exhibit B is such a commitment and representation and that defendant Overland wrote it intending the plaintiff rely upon it or at least was aware plaintiff would rely upon it.

Overland argues exhibit B was not addressed to the plaintiff but, rather, to Western Heights and, therefore, cannot be considered a representation to plaintiff as to the loan commitment, and given the provisions of the third paragraph of the letter which provided no loan liability in the event of a substantial adverse change in Western Heights' financial condition that plaintiff could not reasonably rely upon Overland's making the loan. Overland also argues that Western Heights' financial condition did substantially deteriorate.

Promissory estoppel may arise from the making of a promise, even without consideration, if it is intended that the promise should be relied upon and in fact was relied upon, and if a refusal to enforce it would result in injustice. The reliance by the promisee should reasonably have been expected by the promisor. 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966). *Johnston, supra,* held that where a person with knowledge of the facts conducted himself in a certain manner, he cannot afterward assume a position inconsistent with such conduct to the prejudice of another who had acted in reliance upon such conduct.

This court, in considering the doctrine of promissory estoppel, although in a context different from that in this case, defined promissory estoppel as a promise by one party upon which another party relies to his detriment, and which the promisor should reasonably have foreseen would cause the promisee to so rely. *Farmland Service Coop, Inc. v. Klein,* 196 Neb. 538, 244 N.W.2d 86 (1976). *Klein* also held that promissory estoppel operates not with regard to a past or presently existing state of facts but, rather, to a situation which one party promises to be true in the future and that it may extend to the promisee or to a third party whom the promisor

should reasonably expect to act upon it.

We believe plaintiff properly pleads an issue of promissory estoppel, and a factual issue exists as to whether defendant knew or should have reasonably expected plaintiff to have knowledge of the letter and to have relied upon it in making the contract with Western Heights that cannot be determined in summary judgment.

If we assume plaintiff could rely upon the letter in making its contract with Western Heights, issues remain as to whether plaintiff could reasonably do so given the condition contained in the third paragraph of that letter and whether Overland had a reasonable basis to deny the loan. Finally, it must be determined if such issues could be determined in summary judgment.

We conclude plaintiff was bound to take note of the third paragraph of the letter and in fact did so prior to making the contract with Western Heights, and any reliance upon the letter is subject to that condition. We further conclude that for defendant Overland to prevail in summary judgment, the evidence must reflect no genuine issue as to whether Overland acted reasonably and in good faith in denying the loan.

We reach the conclusion that Overland's refusal to make the loan must be reasonable and in good faith based upon our review of cases dealing with agreements to extend credit and to make loans. While there is a general policy requiring good faith and fair dealing with respect to contracts, Restatement (Second) of Contracts § 205 (1981), there are more specific cases dealing with agreements for credit or loans. In *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir. 1985), the court held there was an implied obligation of good faith imposed on a lender to give notice to a borrower before refusing an advancement under an agreement to extend credit unless the refusal without notice was made in good faith on the basis that the borrower's financial condition would not support such a loan. While this decision has been criticized and distinguished in some jurisdictions and held not applicable where demand debts were involved, *Flagship Nat. Bank v. Gray Distribution Syst.*, 485 So. 2d 1336 (Fla. App. 1986), or where there was only a line of credit arrangement and not a commitment to make a specific loan, *Shaughnessy v. Mark Twain State Bank*, 715 S.W.2d 944 (Mo. App. 1986), most jurisdictions appear to agree

that if there was an agreement to make a specific loan, then good faith and reasonableness are required when the bank determines the borrower is not financially sound and refuses to make the loan for that reason. *In re Red Cedar Const. Co., Inc.*, 63 Bankr. 228 (Bankr. W.D. Mich. 1986); *Midlantic Nat. Bank v. Commonwealth General*, 386 So. 2d 31 (Fla. App. 1980).

We conclude the language contained in the letter, exhibit B, amounts to a specific loan commitment, albeit conditioned in the third paragraph. The letter is specific as to the amount of the loan, the purpose, the parties involved, and the improvement to be financed. The condition set forth in the letter permitting the refusal of the loan must, therefore, be exercised reasonably and in good faith.

A review of the evidence available to the bank concerning Western Heights' financial condition at the time of the loan refusal in December 1983, as previously outlined, leads us to the conclusion that it would be for the trier of the facts to determine the reasonableness and good faith of Overland's actions in refusing the loan and that the evidence shown does not rise to the level that this issue may be decided in summary judgment.

We deem it appropriate to add a caveat that our consideration of the cases on the issues of reasonableness and good faith in loan denial is limited to the specific facts of this case and is not to be considered as stating any rule beyond what is here required.

What we have held with respect to the issue of equitable estoppel is also applicable in the main to plaintiff's claim respecting unjust enrichment. It is essentially a question of whether benefits inured to the bank as a result of the grading and asphalt work and whether or not the bank was justified in refusing the loan. If it was justified, then whatever benefits resulted were not from inequitable or unconscionable conduct. If it was not justified, then the issue exists. In any event, it is a matter not subject to resolution in summary judgment in this case.

For the reasons above set forth, we reverse the judgment of dismissal of the trial court and remand this cause for trial.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.