RICHARD A. WHORLEY ET AL., DOING BUSINESS AS GREENWOOD TRUCK PLAZA & COPPER PLATE RESTAURANT, APPELLANTS, V. FIRST WESTSIDE BANK, A NEBRASKA CORPORATION, APPELLEE.

485 N.W.2d 578

Filed July 2, 1992.   No. S-89-1389.

Victor J. Lich, Jr., of Lich, Herold & Mackiewicz, for appellants.

William E. Morrow and Mark J. Peterson, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The district court sustained the demurrer of the defendant-appellee, First Westside Bank, to the third amended petition filed against it by the plaintiffs-appellants, Richard A.

and Rita A. Whorley and R.A.W., Inc., doing business as Greenwood Truck Plaza & Copper Plate Restaurant, and thereafter dismissed the plaintiffs' action. Plaintiffs assign the dismissal as error. We reverse and remand for further proceedings consistent with this opinion.

The petition asserts three separate theories under which the plaintiffs claim to be entitled to recovery as the result of the damages they sustained as the proximate result of the bank's failure to lend them $65,000: (1) breach of contract, (2) promissory estoppel, and (3) breach of the bank's obligation to deal in good faith.

Resolution of this appeal is controlled by the axiom that when ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from any pleaded legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. See *Pappas v. Sommer, ante* p. 609, 483 N.W.2d 146 (1992).

The allegations of fact are that the plaintiffs consulted with the bank regarding a loan to enable them to purchase the truck plaza and restaurant and to finance improvements to the property. The bank agreed to provide financing in the amount of $575,000, provided the Small Business Administration would guarantee the loan. The business administration guaranteed 86 percent of the loan on April 18, 1985, and required that in "the event of a cost overrun on construction," either the plaintiffs or the bank would "provide additional funds, as needed, to complete construction on a lien subordinate to the collateral required by this Loan."

On May 1, 1985, the plaintiffs executed a promissory note in favor of the bank in the principal amount of $575,000, payable in monthly installments over a 20-year period. The plaintiffs also executed deeds of trust on the real estate on which the business improvements were located, as well as on the Whorleys' home, and a security agreement granting the bank a security interest in various items of tangible and intangible personal property. The bank thereupon made the first

disbursement on the loan in the amount of $305,000.

In early September 1985, when $220,000 remained undisbursed on the loan and major remodeling construction had not yet commenced, the plaintiffs determined that the construction costs for remodeling were going to exceed the original projections and that, therefore, the original loan amount of $575,000 would be insufficient to complete the project.

Richard Whorley then met with one of the bank's vice presidents and told him of the overrun. As a result, "[t]he original loan agreement was modified by [the vice president] orally representing and agreeing that the bank would increase the loan amount and loan the additional $65,000.00 to cover the cost overrun." The vice president then advised Whorley to proceed with the project because the business administration was "pressuring the [bank] to complete the loan." The plaintiffs confirmed the $65,000 cost overrun in a September 25, 1985, letter to the bank, and remodeling work commenced in October.

On November 1, 1985, the vice president spoke with Whorley and again advised that construction should proceed, but informed Whorley that the bank would not increase the original $575,000 loan by more than $45,000. Ultimately, the bank refused to loan any "additional funds" to the plaintiffs.

First, the plaintiffs urge that the bank breached the modified contract by refusing to increase the loan to $640,000. In response, the bank argues that as the plaintiffs failed to allege that the third-party guarantor to the original loan agreement, the business administration, agreed to the modification, the plaintiffs have failed to state a breach of contract action.

It is clear that the terms of a written executory contract may be orally modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration. *Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989); *Cole v. Hickey*, 215 Neb. 728, 340 N.W.2d 418 (1983); *Havelock Bank of Lincoln v. Bargen*, 212 Neb. 70, 321 N.W.2d 432 (1982); *W. Wright, Inc. v. Korshoj Corp.*, 197 Neb. 692, 250 N.W.2d 894 (1977). We have also ruled that where the modification of a contract substantially changes the liability of

the parties, mutual assent is required. *Grand Island Prod. Credit Assn. v. Humphrey*, 223 Neb. 135, 388 N.W.2d 807 (1986); *Havelock Bank of Lincoln v. Bargen, supra.* See, also, *Westbrook v. Masonic Manor*, 185 Neb. 660, 178 N.W.2d 280 (1970). The silence of a contracting party to a proposed modification leaves the contract unmodified. See *Elgin Mills, Inc. v. Melcher*, 181 Neb. 17, 146 N.W.2d 573 (1966). We have also declared that a contract made for the benefit of a third party with the third party's knowledge ordinarily cannot be changed without the third party's approval. *Richards v. Estate of Gilmore*, 140 Neb. 165, 299 N.W. 365 (1941).

It is true that the business administration's guaranty contemplated the possibility of cost overruns and obligated either the bank or the plaintiffs to provide the necessary funds to cover the overruns, should they occur. However, the business administration's requirement that any liens arising from such a loan be subordinated to those arising under the guaranteed loan necessarily implies that any cost overrun loan be the subject of a separate agreement. Were the overrun provision of the guaranty to be read as a before-the-fact consent to a modification, questions would arise as to whether only the amount of the loan could be modified or whether its other terms, such as its duration and the interest rate, could be modified as well. The requirement of a separate arrangement, on the other hand, obviates any confusion as to what might be modified and as to how the monthly payments were to be applied to the sums borrowed.

Thus, since the plaintiffs alleged that the bank agreed to modify the guaranteed loan, without alleging that the business administration consented to the modification, the district court properly determined that the plaintiffs failed to state a breach of contract action.

The plaintiffs next assert that the bank is, in any event, estopped from refusing to loan them the additional $65,000 by its promise to do so, which promise "was intended to be relied upon and was relied upon [by them] to their prejudice and such reliance should reasonably have been expected by the [bank]." The bank counters with the argument that promissory estoppel is merely a substitute for consideration and that as the plaintiffs

failed to allege the duration of the additional loan, the interest rate, the method of payment, or the additional collateral, the promise was not specific and definite enough to form a contract.

Contrary to the bank's view, the applicable rule is that " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . .' " *Rosnick v. Dinsmore*, 235 Neb. 738, 748, 457 N.W.2d 793, 799 (1990), quoting from the Restatement (Second) of Contracts § 90 (1981). See, also, *Gilbert Central Corp. v. Overland Nat. Bank*, 232 Neb. 778, 442 N.W.2d 372 (1989); *Yankton Prod. Credit Assn. v. Larsen*, 219 Neb. 610, 365 N.W.2d 430 (1985); *Farmland Service Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976).

As does the bank in this case, the defendant in *Rosnick* argued that promissory estoppel only provided a substitute for consideration and could not be used as the basis for an independent cause of action and that to recover under the Restatement, *supra*, all elements to contract formation, apart from consideration, had to be present, including an offer with reasonably definite terms. We, however, held that "there is no requirement of 'definiteness' in an action based upon promissory estoppel," only that the "reliance be reasonable and foreseeable." *Rosnick*, 235 Neb. at 749, 457 N.W.2d at 800. See, also, *Kiely v. St. Germain*, 670 P.2d 764 (Colo. 1983) (promissory estoppel is not defined totally in terms of contract principles and is often appropriate when the parties have not mutually agreed on all the essential terms of a proposed transaction); *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965) (it would be a mistake to regard an action grounded on promissory estoppel as the equivalent of a breach of contract action). But cf., *Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621 (5th Cir. 1985) (under Texas law, the indefiniteness of essential element of putative contract precluded application of promissory estoppel theory to enforce the contract); *Jungmann v. St. Regis Paper Co.*, 682 F.2d 195 (8th Cir. 1982) (in Iowa the elements of promissory estoppel

require a clear and definite agreement); *Keil v. Glacier Park, Inc.*, 188 Mont. 455, 462, 614 P.2d 502, 506 (1980) (under Montana law, promissory estoppel requires a "promise clear and unambiguous in its terms," and while parties had agreed that plaintiffs would provide an emergency water pump for defendant's use, there was no agreement as to what accessories would be provided, who would provide the maintenance, or what specific price would be paid other than reference to a reasonable rate, which were circumstances that disclosed a classic case of a promise that was not sufficiently clear to establish a contract by promissory estoppel); *Weitzman v. Steinberg*, 638 S.W.2d 171 (Tex. App. 1982) (doctrine of promissory estoppel enforces obligations which would otherwise be barred at law, for example an oral contract for the sale of real property, and does not create the essential contractual elements where none existed before).

The *Rosnick* court opined that "the doctrine of promissory estoppel 'does not impose the requirement that the promise giving rise to the cause of action . . . be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee.' " *Rosnick*, 235 Neb. at 749, 457 N.W.2d at 800, quoting *Hoffman v. Red Owl Stores, Inc., supra.*

Thus, the district court erred in finding that the plaintiffs failed to state a cause of action for promissory estoppel.

Lastly, the plaintiffs claim that the bank also breached its obligation of dealing in good faith as required by Neb. U.C.C. § 1-203 (Reissue 1980), which provides: "Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement."

Having failed to plead facts establishing that the bank was contractually or otherwise bound to them under the code, it follows that the plaintiffs failed to state a cause of action under § 1-203 and that the district court correctly so ruled.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, J., not participating in the decision.