SOLAR MOTORS, INC., FORMERLY KNOWN AS BAKER CHRYSLER, PLYMOUTH, DODGE, INC., AND BRETT R. BAKER, APPELLEES AND CROSS–APPELLANTS, v. FIRST NATIONAL BANK OF CHADRON, APPELLANT AND CROSS–APPELLEE.

545 N.W.2d 714

Filed April 5, 1996.   No. S–93–622.

Trev E. Peterson and Rodney M. Confer, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Steven W. Olsen, of Simmons, Olsen, Ediger & Selzer, P.C., for appellees.

Robert J. Hallstrom, of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Nebraska Bankers Association, Inc.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and, GERRARD, JJ.

WHITE, C.J.

This lender liability action was brought by plaintiffs–appellees Solar Motors, Inc., and Brett Baker, Solar Motors' president, alleging that defendant–appellant, First National Bank of Chadron, breached a lending agreement between the parties. Specifically at issue are the bank's actions in demanding payment of a promissory note. At trial, the jury returned a verdict in favor of the plaintiffs in the amount of $204,357. The bank appealed to the Nebraska Court of Appeals, which reversed and remanded with directions to dismiss, holding the bank not liable. *Solar Motors v. First Nat. Bank of Chadron*, 4 Neb. App. 1, 537 N.W.2d 527 (1995). The plaintiffs successfully petitioned this court for further review.

The plaintiffs assign six errors in their petition for further review, which can be consolidated into three. The plaintiffs contend that the Court of Appeals erred in (1) failing to find that the February 20 and March 5, 1990, letters from the bank to Solar Motors constituted a modification to the lending

agreement between the parties; (2) failing to find that the bank breached the terms of this alleged modified contract; and (3) failing to find that the bank breached its obligation of good faith and fair dealing under this alleged modified contract. We affirm the judgment of the Court of Appeals.

The record reveals the following facts: Baker purchased a Chrysler franchise, Solar Motors, from Northwest, Inc., in 1988. The bank had entered into lending arrangements with Northwest in the past for the financing of its automobile dealership.

In December 1988, the bank agreed to help finance Solar Motors' business. Baker signed two promissory notes to the bank. One note was in the amount of $40,000 for the purchase of equipment (equipment note), to be amortized over 7 years. The other note was a demand note (floor plan note) in the amount of $125,000 to finance the purchasing of used vehicles for resale. The floor plan note was executed on a standard form that contained requisite blanks for a variety of different note types. This floor plan note was filled out to provide payment on demand.

In February 1990, the bank returned for insufficient funds two checks drawn by Solar Motors to pay Chrysler for certain expenses. Steve Erwin, president of the bank, wrote a letter dated February 20 to Chrysler pursuant to Baker's request to ease any concerns that Chrysler representatives might have as a result of the returned checks. Erwin's letter to Chrysler provided assurances that Solar Motors would no longer be overdrawn and also stated, "The bank at this time plans on continuing to work with this company in the 1990 year."

On March 5, Erwin wrote a letter to Baker at Solar Motors regarding the status of the parties' lending agreement. The letter stated that the bank was requiring "changes to be made" by Solar Motors to continue financing the floor plan line. These changes included, among other things, a 1–percent increase in the interest rate, no financing of vehicles over 180 days, elimination of Baker's personal draws on the account, and a decrease in the floor plan line of $25,000 per year.

Subsequent to the receipt of this letter, Baker met with Erwin to discuss the terms set forth in the letter. Erwin testified at trial

that shortly after this discussion, a new promissory note was signed to reflect the 1-percent increase as indicated in Erwin's letter. This renewal note was not dated, but still contained the standard form demand provision that was in the original note.

Erwin sent a letter dated August 23, 1990, to Baker requesting payment of the balance of the loans. This letter listed various reasons for the bank's requesting payment, including continued losses in revenue, checking account overdrafts, and undercapitalization.

After the August 23 letter, Baker requested that the bank continue its financing. The bank wrote a letter dated November 6 offering to make a "new commitment" under the terms specified in that letter. The bank's letter stated that the offer to make a new commitment would remain open until November 15. Solar Motors never responded.

On April 1, 1991, the bank wrote Solar Motors a letter stating that if the obligations were not paid in full by April 22, legal action would be commenced. Demand was made again on May 7, and the balance of the notes was eventually paid on June 24.

The plaintiffs filed a petition in Dawes County District Court, alleging damages based on theories of breach of good faith and fair dealing, breach of contract, negligent misrepresentation, and breach of fiduciary obligations. The trial court submitted the case to the jury on the theory that the bank breached its obligation of good faith and fair dealing by calling for payment on the floor plan note. The trial court refused to submit the breach of contract theory to the jury.

After deliberations began, the jury posed the following question to the district court judge: " 'Is a DEMAND note truly able to be called for absolutely no particular reason, other than the bank's choice, or must a bank use one of the reasons listed under the "other terms and conditions" section?' "

The judge responded to the jury by issuing jury instruction No. 6: "A Borrower need not be in default before the lender may demand payment. The 'Default and Acceleration' portion of the promissory note does not apply when the note is a demand note. However, the demand is subject to the duty of good faith and fair dealing."

The jury returned a verdict in favor of the plaintiffs in the amount of $204,357.

The bank appealed to the Court of Appeals, contending that there was no implied duty of good faith and fair dealing when calling due a promissory note that was payable on demand. The plaintiffs cross–appealed, contending that the district court erred by failing to submit the breach of contract issue to the jury.

The Court of Appeals reversed the judgment and remanded the cause with directions to set aside the judgment and dismiss the plaintiffs' petition. The Court of Appeals found that no obligation of good faith and fair dealing accompanied the calling of a demand instrument and further held that the February 20 and March 5, 1990, letters did not modify the original lending agreement as evidenced by the original floor plan note.

This case essentially involves the review of the district court judge's instructions to the jury and the jury's verdict in favor of the plaintiffs. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Klawitter v. Lampert*, 248 Neb. 231, 533 N.W.2d 896 (1995).

A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995). A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Winslow v. Hammer*, 247 Neb. 418, 527 N.W.2d 631 (1995). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential

conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995).

The plaintiffs contend in their brief in support of the petition for further review that the jury did not rely on the obligation of good faith and fair dealing accompanying the calling of a demand note. Instead, the plaintiffs contend that the letters of February 20 and March 5, 1990, modified the lending agreement as evidenced by the original floor plan note so as to exclude the demand provision and that the bank breached both its duty of good faith and the terms of this modified agreement. The bank, however, contends that it was entitled to demand payment because of the demand provision in the floor plan note.

We first find it necessary to address the validity of the trial judge's proposition of law in jury instruction No. 6, stating that a party calling a demand instrument is bound by the obligation of good faith and fair dealing. Nebraska's Uniform Commercial Code regulates negotiable instruments, which include demand instruments. See Neb. U.C.C. §§ 3-103, comment 1, and 3-104(1)(c) (Reissue 1980). Neb. U.C.C. § 1-203 (Reissue 1980) states that "[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement." The plaintiffs contend that the obligation set forth in § 1-203 was imposed on the bank when calling due the floor plan note.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995). In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Omaha Pub. Power Dist., supra.*

The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent,

harmonious, and sensible. *Omaha Pub. Power Dist., supra.* A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. *Chrysler Corp. v. Lee Janssen Motor Co.*, 248 Neb. 281, 534 N.W.2d 568 (1995).

This court has held that an obligation of good faith in the performance or enforcement of a contract can exist in a debtor–creditor relationship. *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 529 N.W.2d 26 (1995); *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991). However, the issue of whether a duty of good faith and fair dealing accompanies the calling of a demand instrument is one of first impression to this court. When looking at other provisions of the U.C.C. in conjunction with § 1–203, we agree with the Court of Appeals that this obligation does not apply to a party calling due a demand instrument.

The U.C.C. defines a demand note as a note that is "payable at sight or on presentation." Neb. U.C.C. § 3–108 (Reissue 1980). The nature of a demand note is that it is payable on presentation at the will of the holder. The note is payable at the will of the holder, because the note is already due. A note payable on demand is due the day after it is executed and delivered, and it may then be the subject of an action to enforce the indebtedness evidenced by it. See *Alexanderson v. Wessmann*, 158 Neb. 614, 64 N.W.2d 306 (1954).

Neb. U.C.C. § 1–208 (Reissue 1992) supports this interpretation that no obligation of good faith and fair dealing arises when calling a demand note. That section discusses options to accelerate at will in negotiable instruments and provides in relevant part:

> A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired.

§ 1–208. The comment to § 1–208 states in part, "Obviously this section has no application to demand instruments or

obligations whose very nature permits call at any time with or without reason." A demand note is not the same as a note containing an acceleration clause, because under the former, payment is already due, whereas under the latter, the date of payment is being accelerated. When reading the comment to § 1–208 in light of the text of the statute, a good faith belief that the prospect of payment or performance is impaired is not required when calling a demand instrument.

Moreover, holding that a demand instrument must be called in good faith would impose terms on the parties to the lending agreement that were never agreed upon.

> The imposition of a good faith defense to the call for payment of a demand note transcends the performance or enforcement of a contract and in fact adds a term to the agreement which the parties had not included. . . . The parties by the demand note did not agree that payment would be made only when demand was made in good faith but agreed that payment would be made whenever demand was made.

*Centerre Bank of Kansas City v. Distributors*, 705 S.W.2d 42, 48 (Mo. App. 1985).

For the reasons stated above, we hold that no obligation of good faith and fair dealing is imposed on a party calling due a demand note. Therefore, the district court judge's jury instruction was in error.

We find, as did the Court of Appeals, that this error was more than harmless and therefore requires reversal. The jury's general verdict provides no indication of whether this instruction was a determining factor in its decision. However, the jury found in favor of the plaintiffs on the theory of a breach of good faith in the performance of a contract, and the bank did not have this obligation under the demand instrument. The substantial rights of the bank have therefore been affected.

The Court of Appeals, however, went beyond reversing the case and remanding the cause of action for a new trial absent the erroneous jury instruction. The Court of Appeals instead concluded that because the demand provision was still a provision of the parties' lending agreement as a matter of law, no modified contract existed in which to support the plaintiffs'

breach of obligation of good faith or breach of contract theories, and that court remanded with directions to dismiss. Therefore, we address whether, as a matter of law, the letters of February 20 and March 5, 1990, failed to form a modified contract that eliminated the demand provision of the note.

When the provisions of an alleged contract being sued upon are so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby, no factual issues exist. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995). "The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below." *Larsen v. First Bank*, 245 Neb. 950, 957, 515 N.W.2d 804, 811 (1994).

The plaintiffs contend that the bank's February 20 letter to Chrysler reflected the bank's promise to continue financing at least through the year 1990. However, the plaintiffs failed to allege in their amended petition that the February letter formed part of the modified contract. "In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 545, 529 N.W.2d 26, 32 (1995). Therefore, this court will not consider the February letter in determining whether the lending agreement was modified so as to exclude the demand provision as the plaintiffs contend.

The plaintiffs contend that the March 5 letter and renewal note must be construed together in determining if the original note was modified. The plaintiffs cite *Nowak v. Burke Energy Corp.*, 227 Neb. 463, 418 N.W.2d 236 (1988), in support of their contention. *Nowak* involved the issue of whether an interest-bearing provision listed in a security agreement, but not listed in a contemporaneously executed promissory note, bound the debtor to pay interest to the creditor. This court concluded that the security agreement and the promissory note should be read as one contract, and stated that

in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are, in the eyes of the law, one instrument, and will be read and construed as if they were as much one in form as they are in substance.

*Id.* at 468, 418 N.W.2d at 240.

It is true that instruments made in reference to and as part of the same transaction are to be considered and construed together. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). The fact that the instruments were made or dated at different times is not significant if they are related to and were part of the transaction. *Id.* The renewal promissory note contained a 1-percent interest rate increase that was reflected in the letter of March 5. This renewal note was admitted into evidence without objection. Therefore, we construe these documents together for purposes of determining whether the contract was modified so as to exclude the demand provision.

Mutual assent by the parties is required to modify a contract that substantially changes the liabilities of the parties. *Whorley v. First Westside Bank*, 240 Neb. 975, 485 N.W.2d 578 (1992). Moreover, the silence of a contracting party to a proposed modification leaves the contract unmodified. *Id.*

The record indicates that the March 5 letter was not intended by the parties to modify the contract so as to exclude the demand provision. The parties never discussed elimination of the demand provision. The renewal note signed subsequent to March 5 reflected a 1-percent increase in the interest rate of the loan. It also indicated, as did the original note, that it was a note payable on demand. The bank, therefore, went beyond mere silence as to any response to a proposed modification removing the demand provision. It explicitly expressed its intention to not modify the demand provision by creating a renewal note that contained another demand provision.

Moreover, the March 5 letter provides no indication as to what an alternative due date could be for the floor plan note. The only provision in the letter referring to time was the goal for Solar Motors to improve its floor plan line $25,000 per year,

therefore eliminating floor plan credit in 5 years. When testifying about this particular provision, Baker testified that Erwin told him that "the term was not a stipulation, that it was just a goal and a positioning statement that I should look at myself and try to do." Baker also testified, "I said as long as it was a goal situation and a positioning statement, I could live with that."

"It is well-established law in this state that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence." *Nowak*, 227 Neb. at 471, 418 N.W.2d at 241–42. The parties interpreted their contract not to include the time provision set forth in the March 5 letter.

When construing the March 5 letter and renewal note together, we conclude that the lending agreement was not modified so as to exclude the demand provision. Because the demand provision was part of the contract, the obligation of good faith does not apply and the plaintiffs have failed to demonstrate that their tendered instruction for breach of contract is warranted by the evidence.

For the reasons above, we affirm the decision of the Court of Appeals.

AFFIRMED.